HIGGINS, Justice.
 

 This is an action by a materialman to recover from the property owners, in solido, the sum of $4,632.01 (including extras of $454.33) for certain materials and labor furnished in the construction of a two story brick triple car garage apartment dwelling, and for recognition of its liens. The plaintiff alle'ges that it signed a guaranty, guaranteeing the faithful performance of the contract by the contractor, H. L. Baker, who undertook to erect the building, but that the guaranty was not binding because it was entered into through error; that the contract and specifications were altered by defendants without authority after the guaranty was signed; and that the guaranty was signed before the contract.
 

 The defense is that the contractors, Baker and Callicoatt, did not carry out their agreement to erect the building for the sum of $3,000 for material and labor, in accordance with the plans and specifications, but abandoned the work; that the defendants then called upon the plaintiff, as guarantor, to complete the erection of the structure; that it refused to do so and the defendants had the dwelling completed at a cost of $1,042.10, leaving them indebted to the plaintiff for the difference between the amount of the contract price and the sum expended, or a balance of $1,957.90, which amount was tendered to the plaintiff and refused; and that the plaintiff is estopped from denying its obligations under the guaranty.
 

 The trial judge was of the opinion that the guaranty was legally effective; that the plaintiff had failed to prove its claim of $454.33 for extras; that the evidence showed that the defendants were entitled to recover $570.53 of the amount of $1,042.-10 expended by them to. complete the build
 
 *681
 
 ing and, accordingly, entered judgment in favor of the plaintiff for the sum of $2,-429.47, with legal interest from date of judicial demand and with recognition of a contractor’s lien on the property.
 

 The defendants appealed to the Court of Appeal of the Second Circuit, which held that the amount involved exceeded its jurisdiction and therefore transferred the case to this court. 14 So.2d 580.
 

 The plaintiff answered the appeal here, requesting that the judgment be increased to the sum of $4,029.74, with recognition of the various labor and material liens filed by it.
 

 On November 20, 1940, the defendants (husband and wife) as owners, entered into a written contract with H. L. Baker and A. M. Callicoatt, builders, to erect a two story brick triple car garage apartment dwelling for the sum of $3,000 for material and labor. On the same day, the plaintiff wrote the defendants a letter guaranteeing the faithful performance of the contract by Baker.
 

 The plea of error by the plaintiff in signing the guaranty is predicated on the fact that its representatives were of the opinion that the unsigned specifications written out by Baker with a lead pencil were the ones to control the building contract and not the typewritten specifications signed by the contracting parties and three witnesses on November 20, 1940.
 

 The evidence shows that the document written out by Baker with a lead pencil made its appearance for the first time after this suit was filed and had never been seen by the defendants until then. It appears that the typewritten specifications were drawn up in triplicate by Mrs. Price, one of the defendants, and copies thereof were given to the contractors and the plaintiff, who subsequently furnished the material for the construction of the building thereunder until the work thereon was abandoned by the original and subsequent contractor, Oscar Bartlett.
 

 The plaintiff also contends that the guaranty is null and void because it was signed before the parties signed the building contract. The testimony shows that the plaintiff’s representatives were familiar with the proposed contract and specifications and agreed to sign and furnish the guaranty, in order that the defendants would accept Baker’s low or successful bid. Furthermore, it is difficult to understand how the plaintiff expects to be relieved of its obligations under the guaranty, when
 
 *683
 
 its representatives knew that before defendant's entered into the contract with Baker they were relying upon the guaranty for their protection and the plaintiff in no way indicated that it considered the guaranty in any way defective. It is too late after the parties have worked under the contract and guaranty for several months for the plaintiff to attempt to change its position, and thereby seriously prejudice the rights of the defendants. Therefore, the plea of estoppel is good. The holdings of the district judge in these respects are correct. United States Fidelity & Guaranty Co. v. Putfark, 180 La. 893, 158 So. 9; E. C. Taylor Co. v. New York & Cuba Mail S. S. Co., 159 La. 381, 105 So. 379; Bradford-Kennedy Co. v. Brown, 152 La. 29, 92 So. 723; Longenbaugh v. Louisiana Irr. & Mill Co., 129 La. 436, 56 So. 359; Ackerman v. Larner et al., 116 La. 101, 40 So. 581; French Market Ice Mfg. Co. of New Orleans, Limited, v. Dalton, 15 La.App. 115, 130 So. 122.
 

 
 *681
 
 Our views are in accord with those of the trial judge that the guaranty was given to cover the typewritten specifications of November 20, 1940, and not the pencil memorandum specifications of Baker.
 

 The plaintiff’s contention that the contract and specifications were altered by the defendants after the guaranty was signed is not borne out by the evidence, but, on the contrary, the defendants proved that due to defective typing of the specifications and contract and omissions therefrom, it was necessary to make the corrections found therein in ink and that these corrections were made at the time the contract and specifications were prepared.
 

 
 *683
 
 While the plaintiff claims $454.33 for extra work done in the construction of the building and filed an itemized statement and lien covering the same, its witnesses’ testimony only covers items of $396.30. In the appendix to the brief the amount-is stated to be $302.80. By comparing a great many of these items with the specifications and the contract, it appears that they were included therein. The remaining extra items covered faulty work installed by Baker and Callicoatt. Consequently, these items cannot be considered as extras and all of them were properly disallowed.
 

 With reference to the cost of completing the building, the plaintiff contends that the original and subsequent contractors, Baker and Callicoatt and Bartlett Bros., respectively, practically completed the building.in accordance with the plans and specifications. Its own witnesses, who examined the building, testified that it would cost between $100 and $150 to finish it. This was obviously an error because the cost of labor and material to paint the building amounted to the sum of $323.16. Two witnesses for the defendants stated that it would cost $850 and $1,042.10, respectively, to properly complete the work.
 

 Baker and Callicoatt began the erection of the building but upon the repeated complaints of Mrs. Price, one of the defendants, that they were not performing the work in accordance with the plans and specifications, they abandoned the job. The defendants then 'called upon the plaintiff as guarantor to complete the building and it employed Bartlett Bros, to finish it. After these men worked for a certain period of time they also left the job because Mrs. Price insisted that it be done strictly in accordance with the specifications. The defendants then called upon the plaintiff as guarantor to finish the work but its representatives refused to do so. Whereupon, the defendants employed L. R. Elder, a contractor who undertook the work at cost, plus a contractor’s fee of 10% of the amount expended. He completed the building at a cost of $1,042.10 and the defendants accepted it and tendered the plaintiff $1,957.90, the difference between ■ the contract price of $3,000 and $1,042.10, and the plaintiff refused to accept this amount.
 

 
 *685
 
 The specifications state: “All workmen to be expert craftsmen and capable of turning out flawless performance, which in every instance and detail must comply with the City Building Code and Regulations * * * ”; that “ * * * all work shall be laid out by contractor and he alone shall be responsible for its accuracy and stability * * * ”; that “ * * * carpentry shall be of the best workmanship performed by skilled craftsmen. Inferior work will not be accepted * * * ”; that “ * * * contractor shall furnish sufficient labor to promote steady progress on structure at all times and shall remain on the job every working day — barring inclement weather— until the job is completed. Any details that may occur during construction that are not sufficiently specified shall by mutual agreement be corrected to the satisfaction of both owner and contractor * * * ” and that “ * * * For the sum of $3,000 contractor agrees to carry out this agreement — in its entirety — even to the smallest detail that may render a perfect satisfactory job. Upon completion owner guarantees (after inspection and approval) cash remittance in full.”
 

 The specifications are rather complete and it is certainly clear that the contractors and guarantors knew that the owners were entitled under the provisions of the agreement to thorough work.
 

 The itemized statement furnished by the contractor, L. Ray Elder, covering the cost of labor and materials to complete the work, is as follows:
 

 “(a) From Shreveport Long Leaf Lumber Company, Inc. materials and mill work .................................... $ 107.23
 

 “(b) Builders Supply Company — hard building materials ..................... 7.30
 

 “(c) Simmons Building Material Company — 1 sack of cement................... .81
 

 “(d) Bob Davis Electrical Company — materials and labor ....................... 45.13
 

 “(e) B. F. Holland — sanding and finished of floors ................................ 53.50
 

 “(f) Building Service Company — 1 large medicine cabinet and furnished hardware .................................... 16.75
 

 “(g.) Tri State Building Specialties — weather stripped windows and material..... 40.00
 

 “(h) J. E. Noble — materials, labor and painting ................................. 323.16*
 

 “(i) Plastering fire box — labor and materials ..................................... 4.50
 

 “(j) Ed Brockhause — cleaning brick work 27.17
 

 “(k) Carpenters and common labor for tearing and replacing of lumber and mill work ............................... 289.04
 

 “(1) H. H. Bain Roofing Company — for compound caulking and metal work.. 7.05
 

 “(m) Shreveport Window Cleaning Company-cleaning windows ........'........ 5.10
 

 “(n) Pay Roll Tax, Compensation & Public Liability Insurance................. 25.57
 

 “Total .................................$ 947.36
 

 “(o) Contractor's Commission 10%......... 94.74
 

 “Total ................................. $1042.10”
 

 The trial judge allowed all of these items except the ones designated by the letters (a), (b), (k) and (n). He granted the contractor's fee of 10% on $518.67, or a total of $570.53, but rejected the balance. It is our opinion that the trial judge properly allowed these items but erred in disallowing those items which he rejected. Our appreciation of the evidence is that the ma
 
 *687
 
 terials and mill work furnished, by the Shreveport Long Leaf Lumber Company and the hardware furnished by the Builders’ Supply Company amounting to $107.23 and $7.30, respectively, were used for the proper completion of the structure. As there was a great deal of faulty work done on the building by the previous contractors, it was necessary for Mr. Elder to employ carpenters and common laborers to tear out and replace certain lumber and mill work and this cost $289.04. This was also necessary for the completion of the building. Due to the fact that the contractors and the guarantor refused to complete the building, it was necessary for the owners to hire Mr. Elder to do so and the payroll tax and premium for compensation and public liability insurance amounting to $25.57 was a proper charge. Our learned brother below was of the opinion that Mr. Baker bid too low and it was impossible to complete the building in accordance with the plans and specifications for the sum of $3,000, and that this was the major cause of the trouble. He also found that Mrs. Price was too exacting. He, therefore, tried to adjust the differences between the parties in an equitable way and disallowed the entire labor bill of $289.04 and attempted to equalize this loss by allowing the painting bill of $323.16. The defendant owners were entitled to have the building completed in a workmanlike way, in accordance with the plans and specifications for the sum of $3,000 for material and labor even though it cost the contractors and guarantor an amount in excess thereof.
 

 It is obvious that where the contractor does not perform the work in accordance with the plans and specifications and abandons the job, it will require a greater amount of money to complete the building than if the work had been properly carried out from the beginning, because the defective work must be eliminated and then proper installation made in its place. There is no doubt that there were some serious defects in the building, for instance, the stairway opening was not high enough for a person to pass without striking his head on the ceiling, the electric switch was located in an inaccessible place, the sheet rock was installed without proper backing or support, the parts of the building which had to be painted were not cleaned before the paint was applied, and the wiring was defective, etc. The trial judge concluded that Mr. Elder’s work was substantially in accordance with the plans and specifications and that he was handicapped by not having the floor plans, which the plaintiff furnished to the two sets of contractors who lost or mislaid them. This was no fault of the defendants. Plaintiff produced the floor plans on the trial of the case. Nevertheless, from a careful reading of the plans and specifications and evidence, we agree with the trial judge in accepting Mr. Elder’s statement that there was a substantial compliance with the specifications and contract in completing the structure.
 

 For the reasons assigned, it is ordered, adjudged and decreed that the judgment in favor of the plaintiff is reduced from the sum of $2,429.47 to the sum of $1,957.90, and, as thus amended, the judgment is affirmed; plaintiff to pay all costs of both courts.
 

 ODOM, J., absent.