ALFORD, Judge.
The original action arose when Prime Time Television, Inc. (Prime Time) sued its lessor, First Continental Leasing Corporation (First Continental), and the supplier, Coastal Computer Systems, Inc. (Coastal Computer) to rescind Prime Time’s lease of computer equipment and to recover damages. First Continental in turn reconvened against Prime Time for non-payment of rent and additionally sued Terry Labat and Bolden W. Haydel under a continuing guaranty agreement signed by them in favor of First Continental.
When Prime Time declared bankruptcy, First Continental was granted a severance and the trial against Mr. Labat and Mr. Haydel as continuing guarantors was heard on February 7,1984. The trial judge held that First Continental had proven its lease was valid and that the continuing guaranty was enforceable. Mr. Labat and Mr. Haydel now appeal the judgment awarding First Continental $3,559.56 for past due lease payments, plus legal interest and $2,500.00 attorney’s fees. After a thorough review of the record, we agree with the trial court’s findings and affirm.
Desiring to obtain a computer system to assist in its business operation, Prime Time, through Mr. Labat, reached an agreement with Coastal Computer, whereby Coastal Computer would furnish and program a computer to meet Prime Time’s requirements. Coastal Computer then arranged for First Continental to purchase the equipment and to lease it to Prime Time. For several months, Prime Time complied with their lease and timely paid the rent before ceasing the rental payments because of problems with the computer.
The lease, effective July 16, 1982, identified the lessor as First Continental, the lessee as Prime Time and the supplier as Coastal Computer. The lease contains provisions, printed in red and underlined on the first page of the lease, which waived any warranties which might otherwise exist against the lessor. Moreover, the lease contains a provision whereby First Continental assigned to Prime Time all warranties and rights which First Continental would have against the supplier, Coastal Computer. Testimony by Mr. Labat showed he signed the lease sometime around June 14, 1982. Because First Con *782 tinental required a continuing guaranty in regard to the lease, Mr. Labat and Mr. Haydel signed the guaranty, dated July 6, 1982, to be effective as of July 16, 1982, the date when the lease became effective. The trial court in its reasons for judgment upheld the waiver of warranties and rights by First Continental in this commercial lease, citing Capitol City Leasing Corporation v. Hill, 404 So.2d 935 (La.1981). Finding the lease and its waivers valid, the court ruled that the continuing guaranty was enforceable.
Mr. Labat and Mr. Haydel contend that the lease is invalid because the “thing” was never delivered as required by LSA-C.C. art. 2692. Although they admit that the computer itself was received by Prime Time, they claim that the lease was never effective because they never received all of the necessary software. We disagree. From the record, it appears that the computer was delivered but that the programming was never completed. Thus the computer, while it operated partially, was defective and did not comply with Prime Time’s requirements. As such, the lessee’s remedy was against the supplier, Coastal Computer, pursuant to the lessor’s assignment of warranty.
Moreover, delivery of the “thing” is shown by an Acceptance Notice signed by Mr. Labat on June 14, 1982, which stated that all the leased items had been received in good condition. However, in the body of the acceptance notice, the date of July 16, 1982, was typed as the reception date. Testimony revealed that Mr. Labat signed the notice prior to receiving the equipment, leaving the date of reception blank. Testimony showed that the date was later added by First Continental after they received verbal confirmation from Mr. Labat of the equipment’s physical delivery. Relying on the notice of acceptance as well as Mr. Labat’s verbal confirmation, First Continental then purchased the equipment from Coastal Computer, paying them the full amount as invoiced.
Appellants’ contention that title problems to the equipment affected the lease is totally without merit. It appears that Coastal Computer did not pay one of its suppliers for part of the computer equipment. However, this does not affect the lease since there is no evidence that Prime Time was ever disturbed in its possession of the leased equipment. See LSA-C.C. arts. 2682, 2704. Additionally, Coastal Computer's supplier lost any vendor’s lien or privilege on the components of the computer with its delivery to Prime Time. LSA-C.C. art. 3227.
Appellants also allege that their continuing guaranty is invalid because it was executed prior to the lease itself. There is some question as to when the appellants actually signed the documents. The continuing guaranty which secures the lease is dated July 6, 1982. Testimony at trial by Mr. Labat revealed that he signed the acceptance notice on June 14, 1982, and that he signed the lease sometime around that same date. Ms. Cathy Mesa, a salesperson for Coastal Computer at the time of the transaction, testified that she was present when Mr. Labat signed both the lease and the continuing guaranty and that both were signed on the same day. She testified that the signing took place prior to July 1, 1982, since she had terminated her employment with Coastal Computer by that date. Mr. Labat indicated that he did not know when Mr. Haydel signed the guaranty as Mr. Haydel did not sign it in his presence.
As noted previously, the effective date of the lease is shown as July 16, 1982, on both the lease and on the continuing guaranty. Likewise the date shown for reception of the computer is shown as July 16, 1982. Testimony of Eva Temple, a vice-president of First Continental, showed that they received the guaranty, lease, acceptance and invoice at their office on July 9, 1982. Ms. Temple further testified that in order to make the lease effective, First Continental typed the date of July 16, 1982, on all of the documents after receiving confirmation from Mr. Labat that the computer equipment had been received.
*783 A guarantor’s continuing guarantee is equivalent to a contract of surety-ship. First National Bank of Crowley v. Green Garden Processing Co., Inc., 387 So.2d 1070 (La.1981). Therefore, a continuing guaranty, like suretyship, is an accessory promise whereby a person binds himself for another already bound. LSA-C.C. art. 3035. There is nothing in the law to prevent the binding from being simultaneous. In the instant case, the lease and guaranty signed by the appellants on or about June 14, 1982, (or on July 6, 1982 as indicated by the guaranty) were both offers to be bound and were not binding obligations at that time. When the offer to lease was accepted by the lessor effective July 16, 1982, the lessee became bound to the obligation. Likewise, the continuing guaranty was accepted by the lessor as being effective on July 16, 1982, thus binding the guarantors. As each monthly rental fell due under the lease, the continuing guaranty extended to each rental.
For the foregoing reasons, we affirm the judgment of the trial court awarding First Continental recovery under the continuing guaranty. Costs of this appeal are to be borne by the appellants.
AFFIRMED.