512 So.2d 1218 (1987)
MERCHANTS TRUST & SAVINGS BANK
v.
Guy W. OLANO, Jr., and Raoul A. Galan, Jr.
No. 87-CA-179.
Court of Appeal of Louisiana, Fifth Circuit.
August 26, 1987.
Claudia Sue Dunn, Pickering, Cotogno, Delsa & Dunn, New Orleans, for plaintiff-appellee.
Raoul A. Galan, Jr., in pro. per.
Before KLIEBERT, GRISBAUM and DUFRESNE, JJ.
*1219 DUFRESNE, Judge.
This is a lawsuit to enforce a continuing guaranty agreement. Plaintiff, Merchants Trust & Savings Bank, made two $10,000 loans to defendant Guy W. Olano Jr.the first on January 7, 1982, the second on March 10, 1982. Olano defaulted on the loans and, after this suit was instituted, filed for bankruptcy. The Bank has proceeded solely against the other defendant, Raoul S. Galan, Jr., alleging he is obligated to pay the loans under two continuing guaranties he signed on January 8, 1982 and March 11, 1982.
At the trial on the merits, the Bank introduced the promissory notes, plus supporting documentation in the form of loan memoranda and computer printouts, and testimony from two bank officers. Galan, although represented by an attorney, did not participate personally and called no witnesses. The trial court rendered judgment in the Bank's favor in the amount of $20,000 plus interest at the rate of 16% from July 23, 1984 until July 23,1985, with interest thereafter at the rate of 8% until paid, plus attorney's fees in the amount of 10% of principal and interest, and for all costs. Galan has appealed.
The Bank's witnesses were two of its loan officers, Joseph Schilleci, Jr., and Robert Weileman. They testified that Olano borrowed the money to provide campaign financing for Galan, who was running for political office. In order to make the loans, the Bank required that Galan personally guarantee payment by signing the continuing guaranties.
Schilleci testified the loans were originally funded on January 7,1982 and March 10, 1982; they were renewed on January 3, 1983, and new notes were executed by Olano, the notes on which this suit was brought. The notes placed in evidence are dated January 3, 1983 and are payable "On demand, or if no demand is made then payable April 4, 1983." The exhibits contain additional endorsements that indicate the maturity dates on both notes were extended several timesapproximately every three monthsthrough November 26, 1984. Schilleci stated the principal balance due on each note at the time of trial was $10,000. Weileman's testimony accorded with Schilleci's.
The continuing guaranties each state, in pertinent part,
"In consideration of MERCHANTS TRUST & SAVINGS BANK at my request, giving or extending terms of credit to GUY OLANO JR. hereinafter called `debtor', I hereby give this continuing guaranty to the said MERCHANTS TRUST & SAVINGS BANK, Kenner, La., hereinafter called `Bank', its transferees or assigns, for the payment in full, up to the amount of TEN THOUSAND AND NO/100 dollars ($10,000) principal, plus all interest, attorney fees, other fees, and charges of whatsoever nature and kind, of any indebtedness, direct or contingent whether secured or unsecured of said debtor to said Bank, whether due or to become due, and whether now existing or hereafter arising. * * * I do furthermore bind and obligate myself, my heirs and assigns, in solido with said debtor, for payment of the said indebtedness precisely as if the same had been contracted and was due or owing by me in person, hereby agreeing to and binding myself, my heirs and assigns, by all terms and conditions contained in any note or notes signed or to be signed by said debtor, making myself a party thereto; hereby waiving all notice including notice of any such indebtedness * * * and I agree upon demand at any time, to pay to said Bank, its transferees or assigns, the full amount of said indebtedness up to the amount of this guaranty, together with interest, fees and charges, as above set forth, * * *.
* * * * * *
"IT IS EXPRESSLY AGREED that this continuing guaranty is absolute and complete, and that acceptance and notice of acceptance thereof by the Bank are therefore unnecessary and they are hereby expressly waived, and the same shall continue in force until written notice of its discontinuance shall be delivered to one of the executive officers of the said Bank, but such discontinuance shall not *1220 affect my liability on any debts and/or obligations of the debtor then existing nor the liability of any other party in the premises." (Emphasis added.)
In his brief to this Court, Galan asserts he protested when the Bank requested he sign the continuing guaranties, but that "Merchants assured him the Olano loan would be repaid from periodic fund raisers and that appellant would not be personally liable." He relates that he signed the guaranties in 1982, but the proposed loans were never finalized; therefore, he assumed the guaranties were void. We cannot consider his version of the events, however, because he failed to present any evidence whatsoever regarding his side of the story.
On appeal, Galan asserts the trial court erred in the following respects: first, by admitting into evidence the promissory notes and two computer printouts entitled "Statement of Commercial Loans" regarding the loans; second, by enforcing the continuing guaranty agreements without the production of any concomitant notes; and third, by not finding that the continuing guaranty agreements were impliedly revoked.
He argues, first, that the promissory notes should not have been admitted because the Bank failed to prove Olano's signature. There is no merit to this argument, because LSA-R.S. 10:3-307 provides, in pertinent part:
"(1) Unless specifically denied in the pleadings each signature on an instrument is admitted. When the effectiveness of a signature is put in issue
(a) the burden of establishing it is on the party claiming under the signature; but
(b) the signature is presumed to be genuine or authorized except where the action is to enforce the obligation of a purported signer who has died or become incompetent before proof is required.
(2) When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense." (Emphasis added.)
The Comment following this section notes that the presumption established by paragraph (b) means that "until some evidence is introduced which would support a finding that the signature is forged or unauthorized the plaintiff is not required to prove that it is authentic." Accordingly, because no evidence challenging the validity of Olano's signature on the notes was presented in this case, the Bank was not required to prove it. See Pierce v. Thompson, 468 So.2d 1379 (La.App. 1 Cir.1985).
Galan also contends the loan memoranda and the computer printouts regarding the loans should not have been admitted because they are hearsay and the Bank failed to lay a proper foundation for their admission under the "business records" exception to the hearsay rule. It is immaterial whether these exhibits were properly admitted; no objection was raised to them when they were offered, therefore they cannot be challenged on appeal. Further, the Bank did not need them to prove its case:
"The amount of the debt [is] the face amount of the notes. Plaintiff does not have the burden of proving nonpayment. Payment is an affirmative defense which must be pleaded and proved by the defendant. * * * Since the defendant did not affirmatively plead payment, the amounts allegedly due are the face amounts of the notes." Pierce v. Thompson, supra, at 1381.
See also, Humphrey v. Humbrecht, 427 So.2d 461 (La.App. 5 Cir.1983).
We turn now to the substantive issues.
Under Louisiana law, a continuing guaranty is considered to be equivalent to a contract of suretyship. First Nat. Bank of Crowley v. Green Garden, 387 So.2d 1070 (La.1980). Civil Code Article 3035 states, "Suretyship is an accessory promise by which a person binds himself for another already bound, and agrees with the creditor to satisfy the obligation, if the debtor does not. [Emphasis added.]"
Galan asserts that the continuing guaranties were unenforceable because they were executed prior to the promissory notes entered into evidence. He relies on a case in which this Court stated, "[S]ince the *1221 continuing guarantee agreement was confected and executed prior to the principal agreement, even if construed as a surety agreement for future rentals, it would be unenforceable. (LSA-C.C. Article 3035)." BNO Leasing Corp. v. Hollins & Hollins, Inc., 448 So.2d 1329, 1335 (La.App. 5 Cir. 1984).
That ruling is inapplicable here. The notes sued upon bear a date later than the date of the continuing guaranties, but the original loans predated the execution of the continuing guaranties. Although the notes signed when the loans were first made in 1982 are not part of the record, that does not affect the validity of the continuing guaranties in this case. Under the evidence in the record, it is uncontested that these notes are renewals of, and precisely replaced, the earlier debts. Therefore, they are encompassed within the scope of Galan's original guaranties. See, by analogy, Hardy v. Whitney, 480 So.2d 766 (La. App. 3 Cir.1985); Nat. Bank of Commerce v. Bowles, 472 So.2d 74 (La.App. 5 Cir. 1985).
A promise to pay money need not be in writing unless it is a promise to pay the debt of a third person. LSA-C.C. art. 1847. Therefore, the Bank was not required to present the notes executed in 1982. To prove the date the obligation was first incurred, the Bank needed "at least one witness and other corroborating circumstances." LSA-C.C. art. 1846. The testimony of the Bank's two witnesses and the other documenation sufficiently satisfy that requirement.
Alternatively, Galan contends that the guaranties were impliedly revoked because the notes are dated almost a year after the guaranties were executed. A continuing guaranty remains in force until revoked by the guarantor, expressly or impliedly, or until its effectiveness is extinguished in some other mode recognized by law. Bonura v. Christiana Bros. Poultry Co. of Gretna, 336 So.2d 881 (La.App. 4 Cir.1976), writs denied 339 So.2d 11 and 339 So.2d 26.
"[W]here the contract is silent, we may look to the provisions of the civil code governing the contract of suretyship to resolve differences between the parties. Where, however, the contract is not silent, the parties are bound by its contents, as agreements legally entered into have the effect of laws on those who have formed them. * * *" First Nat. Bank of Crowley v. Green Garden, supra, at 1073.
As in the Bonura case, the wording of the contracts here is clear and unambiguous: Each guaranty states it "shall continue in force until written notice of its discontinuance shall be delivered to one of the executive officers" of the Bank. Accordingly, an implied revocation was not possible under these agreements. "To hold otherwise would be in derogation of the true intent of the parties." Bonura, supra, at 886.
Further, Galan failed to present any evidence to support his claims that the guaranties were impliedly revoked or that they were to be paid solely through moneys obtained by fund raisers. His failure to testify raises a presumption that "the facts, as he would have them, do not exist." Davis v. Myers, 427 So.2d 648, 649 (La.App. 5 Cir.1983); see also, Ruthardt v. Tennant, 252 La. 1041, 215 So.2d 805 (1968).
For the foregoing reasons, the judgment of the district court is affirmed. Appellant is to pay the costs of this appeal.
AFFIRMED.