**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Joseph Elbert KEETON, et al., Defendants–Appellees.**

No. 87–4276.

United States Court of Appeals, Fifth Circuit.

June 21, 1988.

On Petitions for Rehearing

Aug. 10, 1988.

Thomas L. Chanove, Jr., New Orleans, La., John A. Broadwell, Asst. U.S. Atty., Shreveport, La., for U.S.

---

Charles R. Blaylock, Monroe, La., for Joseph Keeton and Martha Keeton.

Clifford L. Lawrence, Jr., Sholars, Gunby, Allbritton, Hayden & Lawrence, Monroe, La., for Doyle Jennings and Laverne Jennings.

Before GARZA, REAVLEY and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

The Small Business Administration appeals the judgment of the district court holding a surety agreement absolutely null because it was executed before the principal obligation was incurred. We reverse.

## I.

In December of 1975, Gibson's Products Furniture, Inc. (Gibson's), through its officers Hubert Minor and Joseph Keeton, executed and delivered to American Bank & Trust Co. (American) a $250,000 promissory note. On October 12, 1981, American assigned this note to the Small Business Administration (SBA). The note is now in default with an unpaid balance just over $94,000 plus interest.

To induce American to make this $250,000 loan, Mr. and Mrs. Keeton and Mr. and Mrs. Jennings, the appellees in this case, executed two suretyship contracts on December 24, 1975, some six days before Gibson's incurred the principal obligation. These personal guaranties are on SBA forms; both Keeton and Jennings testified that they knew the guaranties were required for the company to get the $250,000 loan. As additional security, each of the appellees on December 22, 1975 executed and delivered to American a $40,000 demand note secured by collateral mortgages on their respective homes.

The SBA filed suit on June 10, 1985 on Gibson's note and also sought recovery against appellees as guarantors on that note. The SBA also sought to enforce the mortgages pledged to secure a portion of the debt. The SBA filed a motion for summary judgment and attached the surety agreements and mortgages along with an affidavit establishing Gibson's default and the amount due on Gibson's note. The district court denied the motion on grounds that the personal guaranty agreements were void because they had been executed six days before the principal agreement came into existence.

The court then held a brief trial to determine whether the parties intended the two $40,000 collateral notes and mortgages to secure Gibson's $250,000 note or their own personal guaranties. The district court determined that those mortgages were intended to secure appellees' guaranties. Having previously declared the guaranties invalid, the district court held that the mortgages were also unenforceable because they were accessory contracts to the guaranties. The SBA timely appealed.

## II.

The district court's conclusion that the surety agreements were unenforceable because they were executed before the principal obligation is predicated on Louisiana Civil Code article 3035, which provides:

Suretyship is an accessory promise by which a person binds himself for another **already bound,** and agrees with the creditor to satisfy the obligation, if the debtor does not.

La.Civ. Code Ann. art. 3035 (West 1952) (amended and reenacted 1987) (emphasis added).

The district court's conclusion is supported by at least one intermediate Louisiana appellate court. The court in *BNO Leasing Corp. v. Hollins & Hollins, Inc.,* 448 So.2d 1329 (La.Ct.App.1984), relied on article 3035 in refusing to enforce a surety agreement guaranteeing the payment of future rentals. *Accord Merchants Trust & Savings Bank v. Olano,* 512 So.2d 1218, 1220–21 (La.Ct.App.1987).

Although article 3035 facially supports the *BNO Leasing* holding and the district court's conclusion, several Louisiana courts have nonetheless enforced surety agree-

ments that were executed in contemplation of future principal obligations. Louisiana courts have relied on various theories in enforcing these obligations. For example, some courts have considered the preexisting surety agreement as an inducement to extend credit to the insured. In *Crescent Cigar & Tobacco Co. v. Rizzuto*, 15 La. App. 642, 132 So. 801, 802 (1931), for instance, the court enforced a surety agreement even though "the agreement seems to contemplate only future obligations of Cangelosi. The intention of the parties, as it appears from the wording of the agreement, was that the defendant would be surety as an inducement to the Crescent Cigar & Tobacco Company to extend credit to Henry Cangelosi."

Other Louisiana courts have enforced surety obligations on a theory of estoppel. In *S.P. Weaver Lumber & Supply Co. v. Price*, 205 La. 678, 17 So.2d 917 (1944), the plaintiff guaranteed the contractor's performance in a building contract. The guarantors sought invalidation of the guaranty on grounds that it was signed before the building contract. In upholding the guaranty agreement, the Louisiana Supreme Court wrote:

> The plaintiff also contends that the guaranty is null and void because it was signed before the parties signed the building contract. The testimony shows that the plaintiff's representatives were familiar with the proposed contract and specifications and agreed to sign and furnish the guaranty, in order that the defendants would accept Baker's low or successful bid. Furthermore it is difficult to understand how the plaintiff expects to be relieved of its obligations under the guaranty when its representatives knew that before defendants entered into the contract with Baker they were relying on the guaranty for their protection and the plaintiff in no way indicated that it considered the guaranty in any way defective. It is too late after

the parties have worked under the contract and guaranty for several months for the plaintiff to attempt to change its position, and thereby seriously prejudice the rights of the defendants. Therefore, the plea of estoppel is good.

*Id.*, 17 So.2d at 919 (citing cases).[1]

Older Louisiana commentary strongly asserts that article 3035 was intended to allow security for future debts.

A final consideration is the nature of the principal obligation. For instance, can suretyship be given for a future debt? Article 3035 states that suretyship is a contract in which a person binds himself for another "already bound", and Article 1771 specifically defines suretyship as an accessory contract made for "assuring the performance of a prior contract". A few early cases indicate that suretyship could exist only as to an "existing debt". But historically, future debts have always been considered subject to suretyship, and this is modern French view. In Louisiana, letters of credit, which are necessarily contracts of suretyship on future debts, have been upheld. In addition, Article 1887 provides that future things may be the object of an obligation, and article 3292, in permitting a mortgage to be given to secure an obligation not yet in existence, offers a useful analogy. It is submitted that future debts have been and should be considered as subject to suretyship.

Hubert, *The Nature and Essentials of Conventional Suretyship*, 13 Tul.L.Rev. 519, 531 (1939) (footnotes omitted). In more recent years, Professor Thomas Harrell reached the same conclusion and resolved the apparent conflict between the language of article 3035 and Louisiana cases that allow sureties to guarantee future obligations.

The civil law has never experienced any theoretical difficulty in creating security for future obligations. Suretyship could be given for such obligations under

---

1. A Louisiana court recently enforced a pre-existing surety on grounds that it was only an offer to guarantee that was accepted when the debtor incurred the principal obligation. *Prime Time Television, Inc. v. Coastal Computer Sys.,* *Inc.,* 484 So.2d 780 (La.Ct.App.1986). Although the SBA argues this theory in its appellate brief, it failed to make this argument to the district court. Accordingly, we do not consider this theory.

Roman law and under Spanish law prevailing in Louisiana before the Code of 1808. Furthermore, the Civil Code provides that a pledge and mortgage can be contracted for future obligations. Despite all of this, support for an interpretation of article 3035 that would preclude suretyship from arising until the debt is formed has been found in the commonly stated proposition that an accessory obligation cannot exist without a principal one. Such an interpretation confuses the question of when a contract can be confected with the questions of when and under what conditions its obligations can be enforced. An accessory obligation obviously cannot be enforced in the absence of a principal obligation (which is what statements concerning the necessity for a principal obligation mean). Nevertheless, there is no doubt, and has never been, any doubt in the civil law that an accesory contract can be made before the principal obligation arises, the creation of the latter being merely a suspensive condition to the enforcement of the former. In fact, the accessorial nature of contracts of security is nothing more than a recognition that such contracts are given upon a particular kind of suspensive condition that distinguishes them from "direct" or "principal" obligations. The enforcement of every accessory obligation is dependent upon the existence of another, unperformed obligation.

Harrell, *Developments in the Law,* 1985–1986, 47 La.L.Rev. 453, 453–54 (1986).

The official comments to the recent amendments to the surety articles lend additional support to this view. In the amendment, the redactors deleted the words "already bound" from article 3035 and removed any doubt that a surety may guarantee a future obligation. La.Civ. Code Ann. art. 3035 (West Supp.1988) (effective January 1, 1988). Although the instant case is governed by the unamended version of Article 3035, the official comments provide that the new article "reproduces the substance" of the former article. "It clarifies the law by deleting from the source article the words 'already bound.'" *Id.* comment (b). The redactors also added a second paragraph to article 3036 that specifically provides that the principal obligation may arise in the future.[2] The official comments provide:

> The second Paragraph of this Article is new. It emphasizes the unqualified nature of the principal obligation and sets at rest speculation that has from time to time been raised as to whether suretyship can be given for future obligations although such contracts have been recognized in Louisiana from the earliest times.

*Id.* comment (b) (citation omitted).

Although the Louisiana courts are not in complete harmony, most of them for various reasons have enforced surety agreements that were formed in advance of the principal obligation; we are persuaded that the Louisiana Supreme Court would adopt this view. Because the appellees presented no other defense to the SBA's action against them on their personal guaranties, we find those guaranties fully enforceable. We leave undisturbed the district court's post-trial ruling that the mortgages were intended to secure the personal guaranties, because the mortgages are enforceable whether they were given to secure Gibson's note or the personal guaranties.

### III.

For the reasons advanced above, the judgment of the district court exonerating appellees on their personal guaranties and decreeing their mortgages unenforceable is reversed. The case is remanded to the district court for entry of judgment in accordance with this opinion.

REVERSED and REMANDED.

ON PETITIONS FOR REHEARING

Appellees, in their application for rehearing, assert that they raised defenses in the district court which were not reached by the court. Specifically, appellees argue that the suretyship agreement was incomplete and failed to adequately identify the obligation to be guaranteed. We agree with appellees that the district court should have an opportunity to rule on these defenses if they were properly and timely presented. Accordingly, the district court on remand should on any defenses properly asserted by appellees that the court did not reach.

Except as stated above, the application for rehearing is DENIED.

---

**2.** New article 3036 provides:

Suretyship may be established for any lawful obligation, which, with respect to the suretyship, is the principal obligation.

The principal obligation may be subject to a term or condition, may be presently existing, or may arise in the future. La.Civ. Code Ann. art. 3036 (West Supp.1988) (effective January 1, 1988).