|,SOL GOTHARD, Judge.
Defendant, Jeffery Long, appeals a decision of the trial court that cast him in judgment to his mother, plaintiff Sharon Grimillion Long, for $93,722.54 plus interest and attorney fees as a result of two promissory notes. For reasons that follow, we affirm.
This matter began with the filing of a petition entitled “Suit on Note” by Sharon Long in which she asserts that her son, Jeffery Long, is indebted to her for $93,722.54 as a result of non-payment on two promissory notes. Both notes are dated October 9, 2002, in the amounts of $30,669.35 and $68,000.00 respectively. As to the note in the amount of $30,669.35, the petition alleges a balance in the amount of $25,722.54 is still due. In the second note it is alleged that the entire principal amount of $68,000.00 .remains unpaid. In his answer to the petition, Jeffery plead the affirmative defenses of failure of consideration, error and duress. After a denial of a plaintiff motion for summary judgment, the matter went before the bench for a trial on the merits. After hearing the testimony and considering the ^documentary evidence, the trial court ruled in favor of plaintiff and rendered judgment accordingly. It is from that judgment that defendant appeals.
At the trial on the merits, the court heard testimony from Sharon Long. She explained that the note for $68,000.00 represented a consolidation and rounded down amount of money her son owed her for various loans, and the other note was for the balance due on a specific loan made on his behalf from Hibernia National Bank.
She stated that when her son Jeffery asked her to borrow some money for him in April of 2000, she established a line of credit from Hibernia National Bank in the amount of $50,000.00 for that purpose. Ms. Long explained that she owned Smoothie King and she took out the loan in the business name, but guaranteed it personally. She gave the money to Jeffery, which he then deposited into his account at Omni Bank. A deposit slip in the amount of $49,890.00 dated April 7, 2000 was entered into evidence to corroborate that testimony. Ms. Long testified that Jeffery agreed to pay Ms. Long’s note to Hibernia each month in return for the loan. For a time Jeffery paid the note as agreed. At some point before the loan was paid in full, Jeffery went to prison. After that Ms. Long paid the loan payment from either her personal bank account or from her business bank account. The total amount Ms. Long paid on the loan for her son is $17,532.83. The copies of the checks paid by Ms. Long for this purpose were also introduced into evidence to support her testimony.
On another occasion Ms. Long lent her son $20,000.00. He asked that he check be made out to his business, JML, but he acknowledged that the loan was actually going to him personally. Ms. Long denied she was investing in her son’s business with that check. That sum was never repaid. While Jeffery was incarcerated, Ms. Long also made payments on a boat Jeffery owned. Documents introduced into the record to support that assertion show that an amount of |4 $5,555.20. While Jeffery was in prison, Ms. Long also lent her son money to pay restitution in association with the conviction in the amount of $4,600.00; and $16,454.00 to buy an engagement ring for his fiancée. Ms. Long also stated that she took out a credit card in her name solely for her son’s use on the condition that he would pay the bill. However, he left a balance of $5,217.74 unpaid. At the time of trial, Ms. Long had paid $3,400.00 of that bill and was continuing to pay on the balance. Ms. Long also testified that she had $5,000.00 hidden in a *36 plant in a spare room of her home. Jeffery moved into the room and threw out the plant and the money. There was evidence offered to show that Ms. Long paid other miscellaneous bills and expenses for her son including Bell South, and tires. All of the loans described, with the exception of the Hibernia line of credit, were consolidated into the note of $68,000.00.
Ms. Long testified that, although her son admitted he owed the money and agreed to pay it, he did not. She was advised by her father to get the debt reduced to writing. Consequently, she spoke with her son and they agreed to execute two promissory notes. One in the amount of $30,669.35, which represented the balance due on the Hibernia loan, and one in the amount of $68,000.00, which represented a consolidation of all of the other debts owed. Jeffery acknowledged that he owed the money and willingly signed the two notes in the presence of his grandfather and his wife, Crissy. However, Jeffery did not pay anything on the notes. Ms. Long testified that when she asked him about the money he told her to “wipe her a— with them.”
Jeffery Long also testified at trial. In the beginning of his testimony he stated that he had been incarcerated for about 19 months on a conviction of mail fraud and bank fraud and alteration of vehicle VIN numbers. He further testified that he was also convicted of stealing sheetrock and for DWI. Jeffery stated that at |fithe time of trial he owned Premier Properties, a business that buys and sells real estate. He currently owns a Mercedes Benz and a Fountain racing boat.
In connection with this testimony, plaintiff introduced two petitions for executory process filed against Jeffery Long. One was filed on March 28, 2003 for $125,625.85 resulting from a promissory note signed by Jeffery on June 27, 2000. The second was filed on April 25, 2003 for $134,748.55 due on a promissory note signed by Jeffery on August 25, 2000. Jeffery denied any recollection or knowledge of either promissory note or lawsuit. He stated that he was sent to jail on August 1, 2000 and was there for 19 months. Jeffery suggested that his brother purchased properties in his name with a forged power of attorney.
Jeffery admitted signing both notes to his mother that are in question in the instant lawsuit, but insisted it was done for purposes of his mother’s “will.” He also confirmed that the promissory note in the amount of $30,669.35, payable on the first day of each month in monthly payments of $1,555.60 was for the Hibernia line of credit. He also admitted that the loan was taken out on his behalf. Although the promissory note specifies that he is to pay the monthly notes to his mother, he actually paid them directly to the bank. In later testimony he acknowledged that his mother paid the notes while he was in prison and some time afterward.
Regarding the second note in the amount of $68,000.00, Jeffery testified that at the time the note was presented to him he disputed the amount. However, his mother said she needed the note for her will and any corrections could be done between the two of them later. On further questioning Jeffery admitted he owned multiple properties and was very familiar with promissory notes and their function. He admitted that, although the note requires him to pay $1,000.00 per month, he has paid nothing on the note since its execution on October 9, 2002 because he does not agree with the amount. Jeffery testified that over the years he has | ^borrowed money from his mother; however, when she asked him to sign the note she presented no documentation to prove the amount. He further stated that his *37 understanding was that the $68,000.00 was a gross figure from which the $55,000.00 she received from the sale of his tanning salon should be deducted.
Jeffery was questioned about the specifics of the amounts included in the $68,000.00 by his mother. He stated that he recalled using her Visa card with her permission, and he understood that he was liable for his charges. He maintained that he did pay on the Visa bill, although he admitted he had no documentation to support that claim.
Jeffery testified that during his imprisonment his mother gave him $800.00 to $400.00 per month, but he maintained he assumed the money was from the proceeds of the sale of his business and not a loan. He claims he should be entitled to an offset of $55,000.00 for the money his mother received in his name for the sale of his tanning salon. Jeffery claims his mother received $10,000.00 as a deposit and $45,000.00 subsequently. He stated that the money went into a personal account over which his mother had control.
His testimony regarding the handling of his finances while he was in prison is not clear. He stated that he only knows for sure that he gave his brother power of attorney, although he acknowledged that his mother had control of some of his business accounts and that his wife, who was running the tanning salon gave the money to his mother for management. He testified that his father paid the monthly payment on his boat, but later admitted that his mother may have paid the note.
As to the proceeds for the sale of the tanning salon, Jeffery testified that the initial $10,000.00 deposit went to his mother, although he has no documentation to show that. Some of the remaining $45,000.00 was divided up as follows; $10,000.00 to Jeffery Long’s personal account, $10,000.00 to his father, Robert Long, $15,000.00 to his brother and $10,000.00 to his mother.
| yjeffery verified his mother’s testimony regarding the purchase of the engagement ring while he was in prison. He stated that he had picked out the ring before his incarceration and had put down a deposit on it, although he could not recall how much. He also acknowledged that his mother paid the balance, but he could not recall that amount either.
He denied that his mother lent him $20,000.00 by check to JML Automotive, an auto repair business he owned. His testimony is that his mother bought into the business, contradicting his mother’s testimony that he loaned him the money to keep the business afloat. Jeffery testified that JML Automotive is a corporation but denied giving his mother any stock for the money. He testified that the money was for the purchase of vehicles at auction to be repaired and resold, and stated that his mother intended to invest in this to get extra income. When questioned about any profits given to his mother from the investment, Jeffery admitted that he did not give her any.
However, he testified that she did receive $14,000.00 from the fraudulent theft of her car. Jeffery maintained that he stole her car with her knowledge for the purpose of defrauding the insurance company. He testified that he stole his mother’s vehicle, his wife’s vehicle, and his brother’s vehicle, rebuilt them, changed the VIN numbers and resold them. He admitted he later was convicted for that offense. He further stated that his mother and other family members were not indicted as part of his plea agreement. On further questioning he admitted that the plea agreement did not specifically mention his mother. Mr. Long testified that as part of his sentence he was required to *38 pay restitution, including $14,000.00 to his mother. He further testified that she promised to pay him back that money.
In conclusion, Jeffery testified that he did not dispute the note on the Hibernia loan. However, he contends the amount on the $68,000.00 note is incorrect because some of the funds were gifts and some of the bills included | ¡¡were actually paid out of his funds. Jeffery maintains that he and his mother were never in agreement as to the actual amount owed.
Lance Gremillion, Sharon Long’s father testified that he witnessed his grandson Jeffery sign both notes in question herein. He stated that Jeffery always acknowledged he owed the money, but could not pay it back. Mr. Gremillion testified that he had spoken to Jeffery several times about the problem and that he remembered the day Jeffery signed the notes very well. Mr. Gremillion stated that Jeffery acknowledged the entire debt on that day without argument. Mr. Gremillion recalled how Jeffery wanted to show his mother and grandfather his home and they enjoyed a pleasant visit before parting on good terms. Mr. Gremillion stated there was no fighting or arguing about the notes or the amount due.
Although Jeffery Long’s wife, Crishelle, was at trial and scheduled to testify, she was shown to have violated the court’s sequestration order. Mr. Robert Long, Jeffery’s father, was overheard by the bailiff informing Crishelle Long, Jeffery’s wife, about the details of Sharon Long’s testimony. When the bailiff brought this conversation to the trial court’s attention, the court questioned Crishelle Long under oath. She denied speaking to anyone about the case. However, Warren Moule-doux, the bailiff, testified that Robert Long, father of defendant, stepped out of the courtroom and spoke to Crishelle Long. Mr. Mouledoux overheard Mr. Robert Long say “she’s lying.” Mr. Moule-doux also heard “something about a Visa bill” and “something about $68,000.00.” Mr. Mouledoux testified that this conversation took place when Robert Long walked out of the courtroom immediately after Sharon Long’s testimony regarding the money owed on the Visa bill.
After hearing this testimony, the trial court excluded the testimony of Crishelle Long and set a rule for constructive contempt for Robert Long.
IflLAW
In brief to this Court, defendant assigns two errors. He maintains the trial court erred in failing to require the plaintiff to prove all of the consideration for the execution of the two promissory notes; and, in allowing the introduction of evidence of a transfer of $20,000.00 to JML Automotive, Inc.
In addressing defendant’s assignments of error, we note that at trial he repeatedly stated that he does not contest the consideration on the $30,669.35 note. Jeffery’s testimony corroborates that of his mother’s that the amount reflects money due on a loan made though a line of credit to Smoothie King and guaranteed by his mother on his behalf. Therefore, we find any arguments related to that note to be without merit.
As to the note in the amount of $68,000.00, defendant admits to signing the note and to owing money. However, he disputes the amount due and argues the affirmative defense of failure of consideration. In brief to this Court, defendant argues that once the defense of failure of consideration is made, the burden of proof falls on the plaintiff to “prove the existence of each and every item comprising the alleged debt of $68,000.00.”
We disagree. Initially, we note that despite the argument made in brief, it is *39 clear from defendant’s testimony that he acknowledged owing money to his mother and signing a promissory note making terms to pay it back. His testimony was that the amount was incorrect and that he was due credits. Thus, his defense is not failure of consideration, but rather, failure to apply certain credits to reduce the amount owed.
Further, we take issue with defendant’s recitation of the burden of proof in this case. In a suit on a promissory note, the plaintiff must merely produce the note in question to make out a prima facie case. The burden then shifts to the defendant to prove any affirmative defenses. Colonial Mortg. & Loan Corp. v. James, 01 — 110 0526 (La.App. 4 Cir. 3/6/02), 812 So.2d 817, 820; citing; Merchants Trust and Sav. Bank v. Olano, 512 So.2d 1218 (La.App. 5 Cir. 8/26/87). In the matter before us plaintiff has presented two properly executed promissory notes which defendant admits signing. He further admitted borrowing money from his mother as consideration for the notes, although he argues the amount of the $68,000.00 note is incorrect due to various credits he should have received toward the debt. Thus, it is defendant’s burden to prove his entitlement to those credits. The only proof offered in that regard is defendant’s testimony and various checks that are not dis-positive of the issue. The evidence presented by defendant to meet his burden required a factual finding by the trial court based on credibility of witnesses.
Our review of the factfinder’s determination of facts must be done using the manifest error/clearly wrong standard. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978), writ denied, 374 So.2d 660 (La.1979). When there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Lirette v. State Farm Ins. Co., 563 So.2d 850, 852 (La.1990); Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973). If there is a reasonable basis in the record for that determination, the court of appeal must affirm even if the appellate court would have made a different finding. Touchard v. Slemco Elec. Foundation, 99-3577 (La.10/17/00), 769 So.2d 1200, 1204.
Given the testimony and documentary evidence presented at trial, we cannot find manifest error in the trial court’s factual findings or determinations of credibility. The trial court clearly did not find defendant’s testimony credible and further found that he did not meet his burden of proof that he was entitled to any credit against the amounts due on the two promissory notes.
|uIn his second assignment of error, plaintiff argues the $20,000.00 check made out to JML Automotive should not have been admitted into evidence because it involved a corporation that is not a party to this action. We find no merit in this assignment. Jeffery stated at trial that JML Automotive was his “business” and that it was a corporation. However, no documentary evidence to the legal nature of the entity was presented to the trial court. Further, Jeffery indicated that he was the sole owner of the business, and admitted taking the check.
For reasons set forth herein, we affirm the trial court and assess all costs of this appeal to defendant.

AFFIRMED.