999 So.2d 130 (2008)
Robert L. KYLE, Jr. and Sheri L. Kyle, Plaintiffs-Appellees,
v.
Brandon Shane SMITH, Defendant-Appellant.
No. 43,781-CA.
Court of Appeal of Louisiana, Second Circuit.
December 3, 2008.
*131 Denny, Gerhardt & Benson by Jody Todd Benson, for Appellant.
E. Ray Kethley, Shreveport, for Appellees.
Before DREW, MOORE and LOLLEY, JJ.
MOORE, J.
Brandon Shane Smith appeals a judgment ordering him to repay $22,082.63 loaned by his former in-laws, Robert and Sheri Kyle, to pay credit card accounts in Smith's name. We affirm.

Factual Background
Before Smith and the Kyles' daughter, Lynzie, got married in February 2004, Smith was carrying a large amount of credit card debt. Early in the marriage, Lynzie complained to her parents that one card issuer (AT & T Universal) was harassing them with phone calls because they were so behind on two cards. The precise discussions were disputed, but in June 2004 the Kyles wrote two checks totaling $1,153.71 to AT & T Universal to get Smith's accounts current. On July 14, they mortgaged their house in Broadmoor for $23,000; with these proceeds, they paid off Smith's two AT & T Universal accounts, a total of $20,653.92. Smith considered these payments a gift to the couple, but Ms. Kyle distinctly recalled extracting his promise to repay $400 a month.
Shortly after this, Smith and Lynzie experienced marital difficulties and in late August, he left her. Ms. Kyle promptly asked Smith to repay the loan. Smith replied that on the advice of his divorce lawyer, he would not make any payment until the community property was settled. Smith never repaid anything.
In November 2005, the Kyles filed this suit to recover their loan. Smith filed a third party demand against Lynzie for reimbursement of her community half of the loan. Then, in a request for admissions, the Kyles stated, "A vast majority of the debt at issue Shane incurred before they married. We are not seeking repayment on this loan for any charges made after February 7, 2004, the date of marriage." Smith therefore dismissed his third party claim. Prior to trial in June 2007, the Kyles stipulated that they were "only seeking to recover for amounts paid on the credit cards which were incurred on the credit cards prior to February 7, 2004."
*132 At trial, Ms. Kyle gave her version of the loan to Smith, including his promise to repay $400 a month, an amount he had been unable to pay to AT & T Universal. She admitted she never got his promise in writing, but offered as corroborating proof their own home equity loan package with Countrywide Financial; the settlement statement showing a payment to the Kyles of $22,725 (principal of $23,000 less a fee of $275); copies of Ms. Kyle's checks to AT & T Universal, totaling $21,082.63; and copies of Ms. Kyle's mortgage payments to Countrywide.
Smith testified that going to the Kyles was Lynzie's idea, which he was not in favor of, but neither his bank nor his grandfather had been willing to refinance his credit card debt. At first he could "never recall" discussing repaying the money to the Kyles, but then asserted that no such discussion occurred. Smith's mother testified that the Kyles asked her who was going to pay back all the money they loaned the couple; the grandfather testified that he dispensed advice, not money, to Smith. Smith's only exhibit was a copy of the answers to requests for admissions.
The district court found Smith's version of the transaction "incredible and not worthy of belief," that he in fact promised to repay the Kyles, and that the circumstances corroborated that the deal was a loan, not a gift. The court rendered judgment ordering Smith to repay all the money advanced plus the Kyles' loan fee, a total of $22,082.63. Smith has appealed.

The Parties' Positions
By one assignment of error, Smith urges that the Kyles failed to prove how much of the loan was applied to prenuptial credit card debt.[1] In support, he cites Ms. Kyle's admission that "a vast majority of the debt at issue" was prenuptial, and the plaintiffs were not seeking to recover for debt incurred after the marriage. He contends, "There is no way to know if the balance on February 7, 2004 was $1.00 or $20,000.00 * * * The record is clear that Shane and Lynzie used these credit cards during their marriage after February 7, 2004." This deficiency, he submits, resulted in a complete absence of proof, precluding any award of damages. In support, he cites Jackson v. Lare, 34,124 (La.App. 2 Cir. 11/1/00), 779 So.2d 808, and Shreveport Great Empire Broadcasting Inc. v. Summergrove Floor Covering, 455 So.2d 703 (La.App. 2 Cir.1984). He dismisses the Kyles' contention, raised by post trial brief, that the burden shifted to Smith to prove how much of the debt was incurred after the marriage. He also submits that the "interpretative decision" was a purely legal issue and subject to de novo, not manifest error, review. He concludes that any award of damages is improper, and asks for reversal.
The Kyles respond that the entire amount loaned, $22,082.63, "went from a line of credit obtained by the Kyles to pay off two credit cards solely in the name of Brandon Shane Smith." They assert they were willing to give him credit for any charges incurred after the marriage, but it was incumbent on him "in the nature of an affirmative defense" to produce evidence to this effect. He produced none, making his defense unproved and speculative. They seek affirmance.

Discussion
Louisiana courts of appeal apply the manifest error standard of review in civil cases. Detraz v. Lee, XXXX-XXXX *133 (La.1/17/07), 950 So.2d 557, and citations therein. Under this standard, a factual finding cannot be set aside unless the appellate court finds that the trial court's determination is manifestly erroneous or plainly wrong. Id. In the instant case, the district court's findings as to how much money the Kyles loaned to Smith, and whether any payments or other defenses applied, are all factual findings governed by the manifest error standard of review.
A party who demands performance of an obligation must prove the existence of the obligation. La. C.C. art. 1831; Suire v. Lafayette City-Parish Consol. Govt., XXXX-XXXX (La.4/12/05), 907 So.2d 37. The Kyles proved that pursuant to their agreement with Smith, they wrote two checks to AT & T Universal on June 26, 2004, totaling $1,153.71, two more checks on July 23, 2004, totaling $20,653.92, and incurred a loan closing fee of $275.00. On this showing, the Kyles proved they were entitled to recover from Smith the principal amount of $22,082.63.
A party who asserts that an obligation is null, or that it has been modified or extinguished, must prove the facts or acts giving rise to the nullity, modification or extinction. La. C.C. art. 1831. Contrary to Smith's argument in brief, the burden shifts to the debtor to prove any defense. Commercial Nat'l Bank v. Rowe, 27,800 (La.App. 2 Cir. 1/24/96), 666 So.2d 1312; Long v. Long, 04-938 (La.App. 5 Cir. 1/25/05), 895 So.2d 34; Shear v. Castrinos, 327 So.2d 558 (La.App. 4 Cir. 1976). Smith proved no payment, credit, offset or any other defense. He testified that the couple used the credit cards during their marriage, but did not document this in any way. The district court was not required to speculate as to Smith's defenses and not plainly wrong to award the full amount proved by the Kyles.
Finally, we have reviewed the cases cited by Smith for the proposition that a complete absence of proof will preclude any award of damages, Jackson v. Lare and Shreveport Great Empire Broadcasting v. Summergrove Floor Covering, supra. Those cases rejected claims of lost future profits as too speculative. Notably, neither involved the recovery of a loan which the plaintiff proved by a preponderance of the evidence. The cases are distinguished on this basis. The assignment of error lacks merit.

Conclusion
The Kyles satisfied their burden of proving the amount of the loan and Smith failed in his burden of proving any defense. The judgment is therefore affirmed. Brandon Shane Smith is to pay all costs.
AFFIRMED.
NOTES
[1] In his statement of the case, Smith disagrees with the conclusion that the transaction was a loan instead of a gift, but concedes that on the record presented he cannot challenge it as manifestly erroneous.