389 So.2d 358 (1980)
Jean BOURGEOIS, Individually and on behalf of her son, Johnny Cullins, and Johnny Cullins, Individually
v.
H. J. FRANKLIN, Catherine C. Franklin, Jack Donnow, Melvin Ockman, National Phosphate Corporation, Link Belt Corporation, ABC Insurance Company, X Y Z Insurance Company and Aetna Casualty Insurance Company.
No. 66034.
Supreme Court of Louisiana.
October 6, 1980.
Herman M. Schroeder, John J. McCann, McCann & Volk, New Orleans, for plaintiff-applicant.
Norman J. Pitre, Luling, Charles W. Dittmer, Jr., Wilson M. Montero, Jr., Martzell & Montero, John J. Weigel, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Esmond Phelps, II, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, for defendants-respondents.
CALOGERO, Justice.
In a tort suit, where the attorneys for plaintiff and defendant, ostensibly with the assent of their respective clients, recite in open court the fact and amount of a compromise settlement without having reduced it to writing, may one of the parties thereafter enforce the settlement?
We granted writs here to review a Court of Appeal decision which held that defendants could enforce the settlement. 377 So.2d 1037 (La.1980).
We hold that what took place in this case was an attempt at compromise and that it was not effective because not in writing as required by Civil Code Article 3071.
Plaintiff, Johnny Cullins, brought suit against several defendants for injuries he suffered while working for Hooker Chemical *359 Company. It seems that on plaintiff's first day at work, his left arm was caught in an unguarded conveyor belt and because of this injury plaintiff lost his entire arm. After a number of amended pleadings, substitutions of parties defendant and dismissals because of settlement, the case came to trial against National Phosphate Corporation, Beker Industries, certain National and Beker executive officers, Raymond Tilyou and Louis Kepfer, the insurers for the foregoing defendants, Ehrsam Company Division of Combustion Engineering, Inc., the manufacturer-designer of the conveyor belt, and its insurer.
During the second day of trial, plaintiff's counsel[1] recited in open court that he and counsel for National, Beker, the executive officers and their respective insurers had reached a compromise as to these defendants. The transcript of this proceeding is set forth in an appendix to this opinion. Thereafter, trial against these defendants did not proceed further, nor was any judgment oral or written then or thereafter rendered.[2] It is the question of the enforceability of this "settlement" which is presently before the Court.
Plaintiff contends that the compromise is unenforceable because it does not meet the codal requirement of La.Civ.Code art. 3071 that "the contract must be reduced to writing." Plaintiff further contends that the Court of Appeal erred in relying on Martin v. Holzer Sheet Metal Works, Inc., 376 So.2d 500 (La.1979) in granting defendants' motion. Finally, plaintiff contends that while his attorney may have agreed with defense attorneys on a settlement, he was confused as to what was taking place and did not himself acquiesce in the compromise.
La. Civil Code article 3071 provides:
"A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which everyone of them prefers to the hope of gaining, balanced by the danger of losing."
"This contract must be reduced into writing." (Emphasis provided.)
While the statute itself does not provide for the consequences of failure to reduce a compromise agreement to writing, this Court has previously held that a compromise which is not reduced to writing is unenforceable. Jasmin v. Gafney, Inc., 357 So.2d 539 (La. 1978).
In support of the contention that the compromise settlement is enforceable even though not in writing, defendants rely upon our recent decision in Martin v. Holzer, supra. Martin is distinguishable in several respects.
Martin was a workmen's compensation case in which, after lengthy discussion and apparent agreement in chambers (between the judge, plaintiff, plaintiff's attorney and defense counsel) the trial judge, in open court, recited an oral judgment into the record, fully and specifically assented to by the parties.[3] That oral judgment was followed *360 by the court's written judgment. We viewed those proceedings as an in-court confession of judgment precluding an appeal under C.Civ.P. art. 2085.
It was argued in Martin that the statements made in open court simply amounted to a compromise and thus under La.Civ. Code art. 3071 must be in writing to be binding. The Court rejected that argument finding that what had transpired in open court was more than simply an agreement of compromise. It was, rather, a confession of judgment. In pointing to the distinctions between C.Civ.P. art. 2085, the confession of judgment provision, and La.Civ.Code art. 3071 concerning the writing requirements for settlements, the Court said, "this article [La.Civ.Code art. 3071] is placed in the code to insure proper proof of extrajudicial agreements and does not apply to a confession of judgment during proceedings in court." Of course the in-court memorialization by counsel of an agreement of settlement is nonetheless extrajudicial in the sense that judgment of the court is not invoked.
Because we find no confession of judgment in this case, but rather simply an agreement of compromise,[4]Martin and its holding are of no help to defendant. Martin is consistent with our findings here although distinguishable on the facts.
While the foregoing reasons alone prompt the result here, we deem worth noting certain other factors. In Martin the trial judge had a conversation with the interested parties, carefully recited the agreed upon statements in court and twice stopped to question the parties as to the accuracy of the agreement and the recited judgment. The trial judge in Martin was fully convinced that the parties understood what was taking place and acquiesced in the compromise and the agreed upon judgment and thereupon rendered the oral judgment followed by a written one. Here, the trial judge never conversed directly with the parties regarding this settlement, nor did he ever obtain a direct assent to the compromise from the plaintiff himself. The trial judge did not render an oral judgment based on the statements made by the attorneys and, rather than being convinced that the parties understood what was taking place and acquiesced in the compromise, to the contrary, he believed and so found upon ruling on the motion to enforce settlement, that the plaintiff did not understand the effect of his attorney's actions and was generally confused about the proceedings.
*361 La.Civ.Code art. 3071 is placed in the code to insure proper proof of extrajudicial agreements. Martin v. Holzer, supra. Planiol also suggests that the writing is required as a means of proof. See Planiol, Civil Law Treatise, Volume 2, Part 2, § 2291. Inasmuch as there is no judgment on the merits outlining the obligations each party has to the other when a case is settled by the parties, the law has seen fit to require the compromise agreement, which sets out those obligations, to be reduced to writing to serve as proof of the agreement and the acquiescence therein.[5] The need for such a reduction to writing is nowhere more clearly seen than in the case at bar.
Plaintiff contends that he was confused as to what was transpiring between his attorney and the attorneys for the other parties. As stated above, these contentions are supported by the findings of the trial judge. Plaintiff further contends that he did not agree with his attorney to dismiss his claims against these defendants for the loss of his arm for only $10,000.00. The trial judge was unimpressed with these contentions stating that he thought there was a difference of opinion between plaintiff and his attorney as to the value of his claim. It is this very confusion over the compromise, its terms and the parties' acquiescence therein that La.Civ.Code art. 3071 sought to eliminate by requiring that a compromise be reduced to writing.

Decree
Because we find what transpired in this case to have been an agreement of compromise and not a confession of judgment, and because that agreement was not in writing, the Court of Appeal writ grant with an order compelling enforcement of the settlement is reversed, the motion dismissed and the case remanded to the trial court for further proceedings.
REVERSED; MOTION DISMISSED; REMANDED.
DIXON, C. J., dissents with reasons.

APPENDIX
"MR. PHELPS: Mr. Dittmer and I have reached an agreement among our parties that my client will pay $10,000.00 to Mr. Cullins in settlement of any claims he has against National Phosphate Corporation, Beker Industries, Hooker and any related companies and any of their employees and, particularly, Raymond Tilyou and Louis Kupfer, and Aetna Insurance Company. Now, in connection with any policy they have insuring those individuals . . .
(REMARKS OFF RECORD)
The point of this settlement is that we do not want to have any additional lawsuits brought against one of our employees the same way that this amended petition was filed against Beker, Kupfer and Tilyou after dismissal of their employer, National Phosphate.
"MR. DITTMER: We agree that we will accept the sum of $10,000.00 in full settlement of anything against Beker Industries, Mr. Kupfer, Mr. Tilyou, their underwriters, and no further action will be taken against the aforementioned parties or against any employees of Beker Industries.
"MR. PHELPS: Well, Beker Industries did not own this plant at the time. It has to be National Phosphate Corporation *362 and their employees. That's what we just agreed to in the hall . . .
"MR. DITTMER: All right.
"MR. PHELPS: ... and that all those people are being released.
"MR. DITTMER: Agreed.
"MR. PHELPS: OK. All right. I think we've got it.
(REMARKS OFF RECORD)
"COURT: All right, Mr. Phelps, you will draft the release?
"MR. PHELPS: I will, and a motion to dismiss.
"COURT: Now, one more thing. The court must assess an expert witness fee with respect to the testimony of Fred Leibkemann. So that there is absolutely no misunderstanding, this is to be borne entirely by the party cast in judgment in this lawsuit. Further, Mr. Phelps by no stretch of the imagination will be liable for any part of this expert fee.
"MR. DITTMER: Thank you. No. OK.
(JURY RETURNED TO COURTROOM)"
DIXON, Chief Justice (dissenting).
I respectfully dissent.
This writ was granted to determine whether a settlement agreement entered into during the course of a trial and dictated into the record constitutes an enforceable compromise. Plaintiff refused to honor the settlement agreement when defendants forwarded to plaintiff's counsel a formal dismissal order and receipt, release and indemnity, along with a draft which represented the settlement funds. The trial judge denied defendants' motion to enforce the settlement. The Court of Appeal issued a writ of mandamus granting defendants' motion to enforce the settlement.
Plaintiff, Johnny Cullins, brought this suit against several groups of defendants for injuries he sustained working for Hooker Chemical Company. Before trial commenced, plaintiff settled with one group of defendants. On the second day of trial, during the noon recess, a compromise agreement was entered into between plaintiff and a group of defendants represented by Esmond Phelps. The trial judge announced to the jury that a settlement had been reached and that these defendants were dismissed from the lawsuit. The terms of the settlement were explained to the court and dictated into the record in the presence of plaintiff. Counsel for plaintiff agreed to the settlement and stated that no further action would be taken against defendants. The transcript of this proceeding is set forth as an appendix to this dissent. (A third settlement with the remaining defendants was made on the third day of trial, and the jury was dismissed).
Plaintiff contends that the compromise is unenforceable because it does not meet the codal requirement of C.C. 3071 that "the contract must be reduced to writing." See Jasmin v. Gafney, Inc., 357 So.2d 539 (La. 1978). Defendants rely on Martin v. Holzer Sheet Metal Works, Inc., 376 So.2d 500 (La. 1979), like the Jasmin case, a workman's compensation suit, where this court decided that a joint stipulation in open court, recorded and transcribed, constituted a confession of judgment. In that case the court stated that C.C. 3071 is placed in the code to insure proper proof of extrajudicial agreements. Planiol also suggests that the writing is required only as a means of proof. See Planiol, Civil Law Treatise, Volume 2, Part 2, § 2291.
Requiring a writing is also meant to ensure that the parties to a compromise seriously intend to enter into a binding agreement. Verbal agreements may be binding contracts, even when a writing is contemplated, unless it is understood that neither party will be bound until the agreement is reduced to writing and executed. Johnson v. Williams, 178 La. 891, 152 So. 556 (1934); Laroussini v. Werlein, 52 La.Ann. 424, 27 So. 89 (1899); Montague v. Weil & Bro., 30 La.Ann. 50 (1878). When a written document is contemplated, if the parties intend to be bound by their original verbal agreement, then a contract subsists from that time, and the writing, when executed, is a memorial of that agreement. See Litivinoff, Offer and Acceptance in Louisiana *363 Law; A Comparative Analysis, 28 La.L. Rev. 1, 9 (1967); Smith, Conventional Obligations, 16 La.L.Rev. 237, 238 (1956). It must appear to be the intention of the parties to make the completion of the agreement depend on the writing, because if it was merely contemplated to secure a more authentic mode of proof, then neither party can pretend the contract was not complete. Ponthier, Traite des Obligations, No. 11.
The intention of the parties here nowhere appears to be to make the completion of the settlement agreement depend upon a signing of a formal compromise agreement or dismissal order. On the contrary, the announcement in open court of the terms of the compromise is evidence that the parties regarded the compromise as complete at that time. The formal requirement that a compromise be reduced to writing was satisfied by the solemn act of dictating the compromise into the record in open court. There was nothing left for the parties to agree upon; the agreement is memorialized in the record; no further writing was contemplated; therefore the parties are bound to the terms of the compromise.
Plaintiff also complains that he was confused throughout the trial and that he did not consent to the compromise agreement. Counsel for plaintiff testified at the hearing on the motion to enforce the settlement agreement that plaintiff authorized him to enter into the settlement and that plaintiff was present in the courtroom when the terms of the settlement were dictated into the record. Plaintiff did not testify at the hearing, although he was present and heard his former attorney's testimony that the settlement had been made with the "knowledge, authorization, and approval of Mr. Cullins." There is no evidence in the record to substantiate plaintiff's contention that he did not consent to the settlement agreement.
For these reasons, the judgment of the Court of Appeal should be affirmed.

APPENDIX
"MR. PHELPS: (Attorney for defendants) Mr. Dittmer and I have reached an agreement among our parties that my client will pay $10,000.00 to Mr. Cullins in settlement of any claims he has against National Phosphate Corporation, Beker Industries, Hooker and any related companies and any of their employees and, particularly, Raymond Tilyou and Louis Kupfer, and Aetna Insurance Company. Now, in connection with any policy they have insuring those individuals . . .
(REMARKS OFF RECORD)
The point of this settlement is that we do not want to have any additional lawsuits brought against one of our employees the same way that this amended petition was filed against Beker, Kupfer and Tilyou after dismissal of their employer, National Phosphate.
MR. DITTMER: (Attorney for plaintiff) We agree that we will accept the sum of $10,000.00 in full settlement of anything against Beker Industries, Mr. Kupfer, Mr. Tilyou, their underwriters, and no further action will be taken against the aforementioned parties or against any employees of Beker Industries.
MR. PHELPS: Well, Beker Industries did not own this plant at the time. It has to be National Phosphate Corporation and their employees. That's what we just agreed to in the hall . . .
MR. DITTMER: All right.
MR. PHELPS: . . . and that all those people are being released.
MR. DITTMER: Agreed.
MR. PHELPS: OK. All right. I think we've got it.
(REMARKS OFF RECORD)
COURT: All right, Mr. Phelps, you will draft the release?
MR. PHELPS: I will, and a motion to dismiss.
COURT: Now, one more thing. The court must assess an expert witness fee with respect to the testimony of Fred Leibkemann. So that there is absolutely *364 no misunderstanding, this is to be borne entirely by the party cast in judgment in this lawsuit. Further, Mr. Phelps by no stretch of the imagination will be liable for any part of this expert fee.
MR. DITTMER: Thank you. No. OK.
(JURY RETURNED TO COURTROOM)"
NOTES
[1] At the time the alleged settlement was made, plaintiff was being represented by Mr. Charles W. Dittmer. Plaintiff has since dismissed Mr. Dittmer as his attorney and has retained new counsel.
[2] The trial proceeded for a third day against Ehrsam and its insurer but these defendants also settled after which the jury was so advised, thanked and dismissed. The enforceability of this settlement was also litigated and the trial court, just as in the case under consideration, denied Ehrsam's motion to enforce an oral settlement. The Court of Appeal in that case, however, denied writs and that decision is now final since Ehrsam and its insurer did not seek writs here.
[3] The trial judge recited for the record what he understood the agreement between the parties to be. He specifically stated that he had discussed the proposed agreement in chambers with the workman/plaintiff and the attorneys for both sides. In fact the judge's outset comment was ". a compromise and consent judgment is hereby stipulated and agreed to as follows. Judgment is hereby entered into declaring Petitioner, Albert Martin, Sr., to be totally and permanently disabled..." Thus an express judgment on the merits was rendered, albeit oral. Further, in reciting the agreement for the record, the trial judge stopped twice to check with the parties to insure that he had properly stated the conditions and procured affirmative responses from both as follows:

"COURT:
Judgment is hereby entered into declaring Petitioner, Albert Martin, Sr., to be totally and permanently disabled under the Workmen's Compensation Law which was applicable at the time of this injury. The injury was on September 23, 1974 and the 1973 Amendment of the Workmen's Compensation Law is the governing Amendment, which is sixty-five dollars a week subject to the amount paid to the Plaintiff.
Let the record reflect that Carlos E. Lazarus, Counsel for Argonaut Insurance Company, checked and telephoned his company and they hereby agree to pay the Petitioner a lump sum amount for his having been declared permanently and totally disabled. The lump sum discounted amount to be paid to the Petitioner will be in the vicinity of sixteen thousand dollars, give or take, the exact figure to be computed. And it is to be noted that the Defendants have thus far paid $6,696.00 in workmen's compensation benefits and $4,372.48 in medical. Is that correct gentlemen?
"MR. LAZARUS:
 Yes, sir.
"MR. CAMPBELL:
 Yes, sir."

[4] A confession of judgment need not be in any particular form. See J. R. Quaid, Inc. v. Cyclone Fence Co., 226 La. 398, 76 So.2d 409 (1955). Nonetheless, it must be an unequivocal confession which leaves no issue to be tried. Reciprocal agreements are not in the normal situation what is contemplated by confession of judgment. Confession has been defined in the jurisprudence as an admission by a party, in pleadings or in evidence, of the validity of his opponent's claim in such a way as to leave no issue to be tried. A compromise settlement in a tort suit where defendant agrees to pay a specific sum while protesting that he is free of fault, and where plaintiff agrees to accept the sum while contending that defendant is at fault and he is really entitled to more, is hardly the admission, or admissions, on issues which confession of judgment contemplates.
[5] Like the law pertaining to the sale of immovable property, this is an area of contractual obligations in which the legislature has decided to require a written instrument for the validity of the transaction. While La.Civ.Code art. 2275 (requiring the sale of immovable property to be in writing) does not specify the consequences of failure to reduce an agreement to sell immovables to writing, it has repeatedly been held that an oral agreement of the sale of an immovable is invalid and unenforceable unless the vendor admits the sale under oath and actual delivery has been made. Perry v. Perry, 122 So.2d 829 (La.App., 1st Cir. 1960); Manuel v. Moity, 313 So.2d 278 (La.App., 3rd Cir. 1975), writs denied 318 So.2d 48 (La.1975); Rebman v. Reed, 335 So.2d 37 (La.App., 4th Cir. 1976), writs denied 338 So.2d 699 (La. 1976); and Rutherford v. Impson, 366 So.2d 944 (La.App., 1st Cir. 1978), writs denied 369 So.2d 140 (La. 1979).