643 So.2d 787 (1994)
Phillip TOWNSEND
v.
John SQUARE, Regional Transit Authority, et al.
No. 94-CA-0758.
Court of Appeal of Louisiana, Fourth Circuit.
September 29, 1994.
Robert G. Harvey, Sr., William J. Larzelere, III, Robert G. Harvey, Sr. & Associates, New Orleans, for plaintiff-appellant.
Veronica E. Henry, David Belfield, III, Wilkerson & Henry, L.L.C., New Orleans, for defendants-appellees.
Before SCHOTT, C.J., and BYRNES and WALTZER, JJ.
*788 BYRNES, Judge.
Plaintiff Phillip Townsend (Townsend) appeals from a judgment granting a motion to enforce a settlement agreement.[1] We reverse.
On or about October 25, 1989, Townsend was allegedly injured when the Regional Transit Authority (RTA) bus on which he was riding collided with a van.
On June 8, 1990, Townsend filed suit against, among others, RTA and John Square, the driver of the RTA bus on which Townsend was injured (hereinafter referred to collectively as "defendants").
Townsend's suit was filed by attorney Robert G. Harvey (Harvey). At some point unclear from the record, Townsend discharged Harvey and hired William Daniel Dyess (Dyess) as his counsel of record.
Dyess entered into settlement negotiations with defendants. The record contains a number of letters detailing these negotiations. These letters form the basis of defendants' motion to enforce settlement agreement.
On April 17, 1993, Townsend sent Dyess a letter which provided:
After our conversation of April 16, 1993 advising me that RTA desired to pay me approximately $25,000.00 I talked to my wife and we decided that this amount is insufficient.
Additionally, I would like to return to my former attorney and would request that you return my file to Mr. Robert Harvey
...
I would appreciate if you would do no further work on my case.
On April 21, 1993, Dyess sent counsel for defendants a letter which provided:
This is to confirm our telephone conversation of April 21, 1993 wherein we agreed upon a settlement of $23,250.00 in the above mentioned matter.
I look forward to hearing from you in the future. If you have any questions regarding this matter, please give me a call.
On April 23, 1993, counsel for defendants sent Dyess a letter which provided:
This will confirm our telephone conversation of April 21, 1993 during which agreement was reached to recommend settlement of the captioned claim to our respective clients in the sum of $23,250. [Emphasis added]
On June 22, 1993, counsel for defendants sent Dyess the following letter:
Please find enclosed the original and one copy of the Motion and Order of Dismissal and Release and the Regional Transit Authority's checks in the amounts of $18,870.25 made payable to Phillip Townsend and you; $3,954.75 made payable to Phillip Townsend, you, St. Charles General and Edward F. Bukaty, III; and $425 made payable to Phillip Townsend, you, Jay C. Zainey and the Medical Center of Louisiana, representing settlement of the claims brought by the plaintiff in this matter.
Please have the documents properly executed and returned to the undersigned. (Emphasis added).
Townsend did not execute the dismissal and release, nor negotiate the checks.
On December 21, 1993, defendants filed a motion to enforce settlement agreement. In their motion, defendants argued that by his letter of April 21, 1993, Dyess confirmed settlement of Townsend's claim for $23,250.
Townsend filed an opposition in which he argued that Dyess did not have authority to settle his claim on April 21, 1993; that Townsend did not agree to settle his claim for $23,250; and that LSA-C.C. Art. 3071's requirements for perfecting a binding settlement agreement had not been fulfilled. Attached to Townsend's opposition was Townsend's letter of April 17, 1993, plus the following affidavit, which was executed by Dyess on January 11, 1994:
I did enter into settlement negotiations with defendants' counsel in April of 1993. By April 21, 1993, I had been discharged *789 by a letter from Phillip Townsend, however, I had no knowledge of this letter at the time.
LSA-C.C. Art. 3071 provides:
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.

This contract must be either reduced to writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form. [Emphasis added]
Although LSA-C.C. Art. 3071 requires a written contract signed by both parties, the agreement need not be contained in one document. Felder v. Georgia Pacific Corp., 405 So.2d 521, 523 (La.1981); McRae v. Ellis, 632 So.2d 841, 843 (La.App. 4th Cir.1994), writ den. 637 So.2d 157 (La.1994).
Defendants-appellees' case ultimately stands or falls on their reliance on Felder, supra. Felder does not support their position. In Felder the defendant prepared a release document which was presented to the plaintiff for execution requiring the defendant to pay plaintiff $700. Defendant sent a draft for $700 signed by an authorized agent to the plaintiff the next day.
Similarly, in the instant case, the defendants prepared and sent to Townsend in the previously mentioned letter of June 22, 1993, a Motion and Order of Dismissal and Release along with three RTA settlement checks. Here the similarities end. In Felder the plaintiff himself signed the release form furnished by the defendant and the defendant signed as a witness on the same form. Defendant got the performance he wanted, i.e., a written release signed by the plaintiff. Plaintiff got what he bargained for, a draft for $700 from the defendant.
In the instant case, although a copy of defendants' Motion and Order of Dismissal and Release is not in the record, it is undisputed that the signature of the plaintiff does not appear thereon in any capacity, whether as principal or as witness. There is no proof in the record that the defendants' signatures appeared anywhere on the documents either. See McRae v. Ellis, supra, where this Court had before it unsigned documents very similar to the instant case. There are no cases in which unsigned settlement documents have been held to satisfy the requirements of LSA-C.C. art. 3071. No Louisiana court has ever enforced such documents unsigned, including the Felder court.
Doga v. Southern Farm Bureau Ins. Co., 511 So.2d 78 (La.App. 3 Cir.1987) represents the outer limits of what has been held to satisfy the requirements of LSA-C.C. art. 3071. In Doga the court stated that: "A draft may serve as a written compromise where it recites that it is in full payment for all claims as a result of an accident and the draft is endorsed and negotiated." (Emphasis added). Plaintiff neither endorsed nor negotiated the settlement checks in the instant case.
In Felder there was no requirement to hold the draft pending execution of the release. Plaintiff had already signed it. This case is not Felder. In the instant case the defendants sent the Motion and Order of Dismissal and Release to plaintiff's former attorney subject to a cover letter which required that "... these checks not be negotiated until the documents have been properly executed and returned to our office." Therefore, the defendants themselves did not consider the settlement complete until the documents were signed.
This is virtually identical to the situation which existed in McRae v. Ellis, 632 So.2d at 844, where this Court recently observed that:
In fact, the letter from the defendants' attorney ... which accompanied these documents, required the plaintiff to sign the documents `prior to transacting on the check.' That language itself indicates that the defendants considered their mailing the draft and the closing documents to McRae's attorney as an offer, which could *790 have been accepted by Ms. Mcrae through the signing of the closing documents, in order to perfect the proposed compromise agreement. (Emphasis original)
Felder may have allowed reference to more than one document to establish the existence of a settlement, but in Felder the release containing the terms of the settlement was created by the defendant and signed by the plaintiff, and then witnessed by the defendant. From these facts alone, offer and acceptance of the provisions of the settlement could be inferred in Felder.
Even with this strong inference, the Felder court still did not feel that the defendant's signature as a witness on the release form was sufficient to demonstrate acquiescence, in spite of the fact that the defendant had prepared the form. The Felder court imposed the additional requirement that the defendant's signature or that of his authorized agent appear in the capacity of principal on the settlement check.
When the Supreme Court in Felder stated that a settlement need not be contained in one document, it was not signalling a lessening of the requirement that the acceptance and acquiescence therein of both parties be clearly and unequivocably expressed. To the contrary, the Felder court effectively reaffirmed the high standards required to establish the confection of a settlement by imposing the additional requirement under the facts of that case that the signature of the defendant or his authorized agent appear on the settlement check. The Supreme Court in Felder in no way implied that the perfection of a settlement can be inferred from an agglomeration of unsigned documents, unnegotiated settlement checks and transmittal letters such as exist in the instant case.
In Felder, supra, the Louisiana Supreme Court set forth the following standard for determining whether separate writings satisfy La.C.C. Art. 3071's writing requirement:
[W]here two instruments, when read together, outline the obligations each party has to the other and evidence each party's acquiescence in the agreement, a written compromise agreement, as contemplated by La.C.C. art. 3071 has been perfected. Id. 405 So.2d at 523-524 (emphasis added).
The writings relied upon by defendants are not sufficient evidence of Townsend's acquiescence in such an agreement.
In Scott v. Green, 621 So.2d 1 (La.App. 4th Cir.1993), this court recently discussed the purpose of requiring reciprocal obligations to be set forth in writing:
The whole purpose for C.C. 3071's requirement that compromise be in writing is to avoid swapping a new dispute for an old to avoid the necessity of credibility evaluations. Specifically, the writing requirement aims at avoiding litigation over what the terms of a settlement are. (Emphasis added).
Id., 621 So.2d at 3, quoting Tucker v. Atterburg, 409 So.2d 320, 322 (La.App. 4 Cir.1982). Similarly, in Bourgeois v. Franklin, 389 So.2d 358 (La.1980), the Louisiana Supreme Court stated:
Inasmuch as there is no judgment on the merits outlining the obligations each party has to the other when a case is settled by the parties, the law has seen fit to require the compromise settlement, which sets out those obligations, to be reduced to writing to serve as proof of the agreement and the acquiescence therein. (Emphasis added).
Id. at 361.
To find that the parties reached a binding compromise where the terms of defendants' release from liability are unknown would be contrary to LSA-C.C. Art. 3071.
While attorneys are presumed to have authority to negotiate a settlement proposal for their clients, they may not enter a binding agreement without the client's clear and express consent. F & S Equipment Co., Inc. v. International Matex Tank Terminals, 469 So.2d 256, 257 (La.App. 4 Cir.1985), writ den. 475 So.2d 358 (La.1985); see also LSA-C.C. Art. 2997(A)(8).
Defendants are presumed to be aware of these requirements of the law and assume the risk of their failure to determine that such requirements have been met. Indeed, defendants' letter of June 22, 1993 clearly reveals their knowledge that the plaintiff's *791 consent to the settlement is still required and that they could not rely exclusively on the authority of the man they erroneously thought still represented the plaintiff. The checks defendants sent could not be negotiated by Dyess without the plaintiff's signature; they were not to be negotiated until the documents had been executed; and the letter did not ask Dyess to execute the documents himself, but to "... have the documents ... executed ...", i.e., signed by the plaintiff, Townsend.
Townsend's letter of April 17, 1993 and the supporting affidavit of Dyess show that Townsend did not intend to settle. In addition, nothing in the letters shows that Townsend acquiesced in a settlement. Defendants make no attempt to refute Townsend's lack of intent, but argue instead that they were justified in relying on Dyess's apparent authority to settle Townsend's claim. However, defendants fail to demonstrate a reasonable basis in the letters for concluding that Dyess had authority to enter a binding settlement agreement without first obtaining Townsend's acquiescence and approval.
The facts in Scott v. Green, supra, are particularly compelling because this Court noted that neither party disputed the fact that an agreement had been reached. That agreement was referred to in correspondence much like that at issue in the instant case, except that in the instant case the existence of an agreement is seriously contested by the plaintiff and cannot be proven to exist:
Neither party denies that an agreement was reached [Emphasis added]. Defendants are merely arguing that the agreement cannot be enforced because it was not in writing.
* * * * * *
A plain reading of the statute mandates that either the agreement be in writing or recited in open court. Failing either of these circumstances, the agreement is not enforceable. Id. at 3.
True, Dyess wrote a letter to the defendants' attorney on April 21, 1993 "... confirm[ing] our telephone conversation of April 21, 1993 wherein we agreed upon a settlement of $23,250.00 ...", but as this Court held in Scott v. Green, 621 So.2d 1, 3, supra: "A letter setting forth one's understanding of the agreement is not an agreement of the parties reduced into writing." Id. at 3.
The facts in the instant case are much stronger than those in the Scott case because here the defendants do not even seriously attempt to prove that Townsend ever agreed to the alleged settlement. Defendants' case is based upon their assertion that they have the right to rely upon the representations of Townsend's attorney, Dyess, who had been discharged by Townsend at the time he made the representations, because Townsend failed to notify them of the discharge. Neither Dyess nor the defendants knew of the discharge at the time.
We find no merit to this argument. Because Dyess did not have authority to enter a binding settlement without Townsend's acquiescence, notice of his discharge is immaterial to the question of whether Townsend entered a binding settlement under LSA-C.C.P. Art. 3071.
Moreover, plaintiff's argument is contradicted by the defendants' own letter of April 23, 1993 which they sent to plaintiff's attorney. That letter indicates that the agreement reached by counsel during the negotiations of April 21, 1993 was not considered perfected by the defendants' attorney, but was contingent upon approval of their respective clients: "This will confirm our telephone conversation of April 21, 1993 during which agreement was reached to recommend settlement of the captioned claim to our respective clients in the sum of $23,250." (Emphasis added).
Under similar circumstances in F & S Equipment, supra, this Court determined that the plaintiff was not bound by his attorney's agreement to settle, where there was no proof that the plaintiff consented to settlement. See also Jacobson v. Harris, 503 So.2d 540, 542 (La.App. 4 Cir.1987), writ den. 503 So.2d 1019 (La.1987). While the writings relied upon in this case show that Townsend engaged in settlement negotiations through his attorney, the writings do not prove Townsend's acquiescence in a settlement.
*792 It is well established that a compromise which is not reduced to writing is unenforceable. Felder, supra, 405 So.2d at 523; Bourgeois, supra, 389 So.2d at 359; Scott, supra, 621 So.2d at 3. Since neither Townsend nor Dyess entered into a written compromise under LSA-C.C. Art. 3071, there is nothing to enforce.
The writings relied upon by defendants do not satisfy LSA-C.C. Art. 3071's writing requirement. The writings demonstrate that Dyess did not have authority to enter a binding settlement, that Townsend did not acquiesce in a settlement for $23,250, and that the parties have not made reciprocal concessions in writing. Accordingly, the trial court erred in granting defendants' motion to enforce settlement agreement.
For the foregoing reasons, the judgment of the trial court is reversed. Costs of the appeal are assessed against defendants.
REVERSED AND RENDERED.
SCHOTT, Chief Judge, concurring.
In order to have a binding compromise there must be an agreement signed by the parties. C.C. art. 3071, Felder v. Georgia Pac. Corp., 405 So.2d 521 (La.1981).
In the present case there is nothing signed by the plaintiff. There is nothing but an exchange of correspondence between counsel. Consequently, there was no binding compromise.
NOTES
[1] "Settlement" must be equated with "compromise." Trask v. Lewis, 258 So.2d 603 (La.App. 1 Cir.1972).