STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-1207

PHYLLIS VENABLE

VERSUS

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA

**********

APPEAL FROM THE
CITY COURT OF ALEXANDRIA
PARISH OF RAPIDES, NO. 117,298
HONORABLE RICHARD E. STARLING, JR., CITY COURT JUDGE

**********

**J. DAVID PAINTER**
**JUDGE**

**********

Court composed of J. David Painter, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

**REVERSED AND REMANDED.**

Thomas D. Davenport, Jr., Attorney at Law
1628 Metro Drive
Alexandria, LA 71301
COUNSEL FOR PLAINTIFF/APPELLEE:
    Phyllis Venable

William M. Ford, Attorney at Law
P. O. Box 12424
Alexandria, LA 71315-2424
COUNSEL FOR PLAINTIFF/APPELLEE:
    Phyllis Venable

Jennifer M. Lawrence, Attorney at Law
201 St. Charles Avenue, Suite 4400
New Orleans, LA 70170
COUNSEL FOR DEFENDANT/APPELLANT:
    The Prudential Insurance Company of America

**PAINTER, Judge.**

Plaintiff filed a motion to enforce a settlement of her claim to receive proceeds from a life insurance policy which listed her as a beneficiary. The City Court of Alexandria found that there was a valid settlement agreement and ordered payment to Plaintiff, including interest, penalties, and attorney's fees. Defendant appeals. For the following reasons, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

Ruby B. McGago, Plaintiff's mother, was covered by a life insurance policy written by Defendant, The Prudential Insurance Company of America. Plaintiff and her sister, Patricia A. Martin, were designated as primary beneficiaries, and McGago's granddaughter, Kim M. Martin, was designated as a contingent beneficiary. McGago died on May 9, 2010. Plaintiff sought to collect under the policy. Prudential, however, refused to pay based upon its assertion that a notation on the policy that each primary beneficiary and the contingent beneficiary were to receive thirty-three and one-third percent (33⅓ %) of the death benefits created an ambiguity that could not be resolved without risk of multiple liability. Prudential received beneficiary settlement forms seeking payment of the death benefit from all three beneficiaries. Prudential claimed to be uncertain as to whether the death benefits should be divided into two or three portions.

On August 25, 2010, Plaintiff filed a suit for damages and enforcement of a life insurance policy. In response, Prudential filed exceptions, an answer, a reconventional demand for concursus, and a third party demand (naming Patricia Martin, Kim M. Martin, and Good Shepherd Funeral Home), and obtained an order to deposit the full amount of the death benefits due under the policy into the registry of the court. However, it was not until January 24, 2011, that Prudential deposited $17,000.00 into the registry of the court.

Settlement negotiations began shortly after Plaintiff's suit was filed. Kim M. Martin allegedly indicated her intent to waive any claims to the death benefits. The record contains a number of letters and e-mails detailing these negotiations. Specifically, Plaintiff alleges that a settlement agreement was reached on November 22, 2010, when counsel for Prudential sent a letter to the trial court stating that the parties had reached an oral agreement to settle, and reduced it to writing on December 3, 2010, in the form of a draft of a confidential settlement agreement and release. The trial court agreed with Plaintiff and granted the motion to enforce settlement, directed the clerk of court to issue a check to Plaintiff in the amount of $5,505.92 plus interest from the date of judicial demand, and awarded Plaintiff $11,104.90 in penalties and $5,000.00 in attorney's fees. Prudential now appeals, asserting that: (1) the trial court erred in finding that there was a valid settlement agreement reflecting the mutual intentions of the parties that had been reduced to writing; (2) the trial court abused its discretion in awarding penalties under La.R.S. 22:1973 for failing to pay the settlement within thirty days of the agreement allegedly being reduced to writing; (3) the trial court erred in awarding attorney's fees where there was no basis for the award in law or contract and absent any proof of the amount of fees incurred; (4) the trial court erred in awarding legal interest from the date of judicial demand on the insurance proceeds; and (5) the trial court erred in allowing parole evidence on the issue of whether a settlement had been reached. We agree with Prudential that an enforceable settlement agreement did not exist, reverse the trial court's judgment, and remand the matter to the trial court for further proceedings.

**DISCUSSION**

We first address whether the parties reached a valid settlement agreement that was reduced to writing as required by La.Civ.Code arts. 3071 and 3072. Louisiana Civil Code Article 3071 reads: "A compromise is a contract whereby the parties, through concessions made by one or more them, settle a dispute or an uncertainty

2

concerning an obligation or other legal relationship." Louisiana Civil Code Article 3072 requires that a compromise "shall be made in writing."

We also note that La.Civ.Code art. 3075 provides that when a compromise is entered into by "one of multiple persons with an interest in the same matter," it "does not bind the others" and cannot "be raised by them as a defense, unless the matter compromised is a solidary obligation." Furthermore, "[a] compromise settles only those differences that the parties clearly intended to settle." La.Civ.Code art. 3076.

In this instance, there was much communication between Plaintiff's attorney and Prudential's attorney. Plaintiff's attorney, Thomas Davenport, even withdrew as counsel of record so that he could testify as a witness concerning the alleged settlement. The trial court relied upon several exhibits to support its finding that there was a valid settlement agreement that had been reduced to writing. The first was a letter dated November 22, 2010, from Prudential's counsel to the trial court, indicating that there had been an oral settlement of the case. However, this letter also indicated that should the "settlement not be reduced to writing, Prudential will immediately deposit the death benefit with the court pursuant to its earlier order." Next was a letter from Prudential's counsel dated December 3, 2010, enclosing a draft "Confidential Settlement Agreement and Release." The release documents had to be signed by Plaintiff, Patricia A. Martin, Kim M. Martin, and a representative of the funeral home. This draft was refused by Plaintiff's counsel, by letter dated December 3, 2010, because several of the terms were unacceptable. For example, Plaintiff's counsel expressed concern about taxation issues, stated that he never agreed to file any dismissal, to pay the court costs incurred by Prudential, or to be governed by the laws of the State of New Jersey.

The trial court next relied on a letter dated December 10, 2010, from Plaintiff's counsel to Prudential's counsel.[1] This letter stated, "We did not agree to the *Confidential Settlement Agreement and Release*" and "[i]f this case is settled, make the revisions as requested in my December 3, 2010, correspondence or we will process [sic] to trial." Counsel for Prudential presumably made some of the requested changes to the release documents; however, Prudential did not agree to remove the confidentiality provision. Plaintiff's counsel responded that his client would proceed with the suit and not enter into further settlement negotiations. Thereafter, Plaintiff's counsel demanded discovery responses and filed a motion to strike Prudential's exception of no cause of action. On December 17, 2010, Prudential agreed to delete the confidentiality provision and sent correspondence to Plaintiff's counsel indicating that if all signatures could be obtained, a check would be ordered before the end of the year. Plaintiff's counsel responded, "I will not stop my litigation efforts on another promise to settle this case."

Settlement negotiations continued, but the parties could not agree on whether the check had to be delivered first or whether the release had to be signed first. Counsel for Plaintiff sent a letter to Prudential's counsel on January 11, 2011, stating, "Should we not receive a check by the end of this week, January 14, 2011, we will proceed to litigation and will not entertain any 'settlement' from you or your client." Following this correspondence, counsel for Prudential notified the trial court that no written settlement agreement could be reached within a time frame acceptable to all parties and deposited $17,000.00 into the registry of the court.

It is clear from this correspondence that there was no meeting of the minds as to several terms of the settlement. While counsel for Plaintiff indicated that Kim M. Martin agreed to waive any claim to the death benefit, there is no indication that he

---

[1] There was also a letter dated December 10, 2010, from Davenport's paralegal to counsel for Prudential indicating that the case was settled and that Kim M. Martin had waived all claims to the funds. Both letters were transmitted by facsimile. However, the letter from Davenport to counsel for Prudential was sent after the paralegal's letter.

4

was authorized to make such a statement. Neither Plaintiff nor Prudential got the performance they were seeking. It is undisputed that the settlement documents remained unsigned.

In *Felder v. Georgia Pacific Corp.*, 405 So.2d 521, 523-24 (La.1981), the Louisiana Supreme Court stated that a settlement need not be contained in one document and "where two instruments, when read together, outline the obligations each party has to the other and evidence each party's acquiescence in the agreement," that is sufficient to meet the writing requirement. It is clear that there must be acceptance and acquiescence from both parties. This court previously reversed a trial court's grant of a motion to enforce settlement in a case similar to the case at bar and stated:

> the parties entered into settlement negotiations and felt that they had reached a settlement. However, when it came time to set forth this agreement in writing, the plaintiff refused to accept the release language offered by Schlumberger. Argument at the hearing indicates that each party envisioned something different with regard to the release Schlumberger would obtain in exchange for the sum agreed upon, *i.e.*, the parties never enjoyed a meeting of the minds as to their intent in entering into the settlement.

*Amy v. Schlumberger Tech. Corp.*, 00-175, p. 5 (La.App. 3 Cir. 6/14/00), 771 So.2d 669, 672.

Moreover, "[t]here are no cases in which unsigned settlement documents have been held to satisfy the requirements of LSA-C.C. Art. 3071." *Townsend v. Square*, 94-758, p. 5 (La.App. 4 Cir. 9/29/94), 643 So.2d 787, 789. The writings relied upon by Plaintiff and the trial court do not satisfy the writing requirement of La.Civ.Code art. 3072. Instead, they clearly demonstrate that there was no agreement to the ultimate terms of a settlement. There was no settlement agreement to enforce. Accordingly, the trial court erred in granting Plaintiff's motion to enforce settlement, and we reverse that judgment in its entirety and remand the matter to the trial court for further proceedings. Since we have reversed the judgment of the trial court and found

5

that no valid written settlement agreement existed, we need not consider Prudential's other assignments of error.

**DECREE**

For all of the foregoing reasons, the trial court's judgment granting Plaintiff's motion to enforce settlement is reversed in its entirety. The matter is remanded to the trial court for further proceedings consistent with this opinion. All costs of this appeal are assessed to Plaintiff/Appellee, Phyllis Venable.

**REVERSED AND REMANDED.**