PAUL A. BONIN, Judge.
 

 I,Gulf Coast Bank & Trust Company loaned Elizabeth and Ferdinand D’Orville money. The loan was secured by a mortgage on the D’Orvilles’ home and by a guaranty signed by Norbert Simmons. The loan became delinquent, and ultimately the D’Orvilles’ debt to the bank was discharged in bankruptcy. Following the foreclosure and sheriffs sale of the home, the bank sought to collect the resulting deficiency from Mr. Simmons. The trial court granted summary judgment in favor of the bank and against Mr. Simmons in the amount of the deficiency. Mr. Simmons appeals the summary judgment.
 

 Mr. Simmons’ sole assignment of error is that the trial court failed to find that a genuine issue of material fact existed as to whether the parties had settled or compromised his guaranty obligation and thereby released Mr. Simmons from his guaranty obligation, which finding would have precluded summary judgment. Because we find on our
 
 de novo
 
 review that Mr. Simmons owes the debt and that his obligation was not extinguished by compromise, we affirm the summary judgment in the bank’s favor. We provide our reasoning in greater detail below.
 

 I
 

 The D’Orvilles borrowed the principal amount of $344,365 from the bank. At the time they promised to re-pay that amount with interest, and, in the event of delinquency or acceleration of the debt, attorneys’ fees, late fees, escrow shortages, courts costs and sheriffs costs. They signed a note which evidenced the indebtedness. The note was secured by a mortgage on their home in the Lakefront area of New Orleans. As a condition for loaning this amount to the D’Orvilles, the bank required and obtained from Mr. Simmons his signed guaranty, by which guaranty Mr. Simmons “absolutely and unconditionally” obligated himself “solidarily” with the D’Orvilles for their indebtedness to the bank.
 

 Mr. Simmons does not dispute that the bank loaned the money to the D’Orvilles and that he signed the guaranty. Aso, he does not dispute that, about two years later, the D’Orvilles defaulted on their obligation to the bank and the bank instituted foreclosure proceedings
 
 via executiva
 
 with appraisement against them, but not Mr. Simmons.
 
 See generally
 
 La. C.C.P. art. 2631
 
 et seq.
 
 When the D’Orvilles could not be located in order to effect service, an attorney at law was appointed to represent them.
 
 See
 
 La. C.C.P. arts. 2674(1), 5091 A(1)(a) and 5251(1). The property was appraised for $421,000.
 

 Eventually the property was sold at sheriffs auction to Edward Neely, Mr. Simmons’ nephew, for $400,000. Ater deducting his costs, the civil sheriff remitted $366,735 to the bank.
 
 [1]
 

 13Ater the sheriffs sale on December 7, 2007, in order to collect the resulting defi
 
 *555
 
 ciency, the bank converted the executory proceedings to ordinary proceedings by filing a supplemental petition, which alleged the foregoing facts, and named only Mr. Simmons a defendant.
 
 [2]
 

 See
 
 La. C.C.P. arts. 2771 and 2772. Mr. Simmons answered the petition with only a general denial.
 
 See
 
 La. C.C.P. arts. 1003 and 1004.
 

 The bank moved for summary judgment, which was opposed by Mr. Simmons. The district court granted summary judgment and rendered a money judgment against Mr. Simmons for the amount of the D’Or-villes’ debt, subject to the $400,000 credit for the proceeds from the sale of their house.
 

 On appeal, Mr. Simmons argues that the trial court erred as matter of law because his affidavit references discussions and email correspondence which' intimate or are suggestive of or reasonably might infer that a compromise between the bank and him occurred and that this constitutes a lingering genuine issue of material fact. Between the time of the filing of the foreclosure proceeding and the sheriffs auction, Mr. Simmons forwarded the following email to the president of the bank:
 

 Unfortunately I am still in Australia and my telephone access is spotty; so I am writing to confirm my intent to have the D’Orville note purchased. I think it may be best to all [the bank] to continue the foreclosure so we get an absolutely clear title.
 

 My thought is to have my nephew, Edward Neely enter a bid for the property in the amount of the bank’s bid. Mr. Neely will pay $375,000 of the bid and I will pay the balance to the bank.
 

 Please ask your attorney to advise me of the best procedure to accomplish this.
 

 Also please ask him to communicate via e-mail; and remember that Australia is 13 hours AHEAD of New Orleans.
 

 The only documented response of the bank president was to direct the loan officer to forward the e-mail to the bank’s attorney.
 

 In his affidavit opposing the motion for summary judgment, Mr. Simmons testified that “he was repeatedly informed, advised and led to believe by [the bank president] and other representatives of [the bank] that if the subject property was sold at auction for $400,000, [the bank] would not seek a deficiency judgment against” him.
 

 II
 

 Mr. Simmons specifically argues in his brief that the email, along with his testimony, “evidences at a minimum, negotiations towards a compromise. This [he argues] creates a genuine issue of material fact as to whether a compromise was ultimately reached between the bank president and Mr. Simmons.” We disagree.
 

 Mr. Simmons’ guaranty obligation to the bank is the obligation of a surety.
 
 See First Nat Bank of Crowley v. Green Garden,
 
 387 So.2d 1070, 1073 (La.1980). Thus, Mr. Simmons is bound to the bank to fulfill the obligation of the D’Orvilles upon their failure to do so by giving “full performance of the obligation.”
 
 See
 
 La. Civil Code arts. 3035 and 3045. He must fulfill their obligation despite their bankruptcy discharge.
 
 See
 
 La. Civil Code art. 3046. The obligation arising from borrowing money is fulfilled by its repayment.
 
 See
 
 La. Civil Code art. 2907. Mr. Simmons admits that his obligation was not extinguished through performance, i.e. repayment.
 
 See
 
 La. Civil Code art. 1854 (“Performance by the obligor extinguishes the obligation.”).
 

 Parties can, of course, contract to extinguish an obligation.
 
 See
 
 La. Civil [Code
 
 *556
 
 art. 1906.
 
 [3]
 
 Generally, a surety’s obligation can be extinguished just as other conventional obligations are extinguished.
 
 See
 
 La. Civil Code art. 3058. A compromise can be just such an agreement to extinguish an obligation: “[a] compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship.” La. Civil Code art. 3071.
 

 But Mr. Simmons did not plead the affirmative defense of extinguishment of the obligation and did not plead facts to support such a plea. La. C.C.P. art. 1003 provides that the answer “shall set forth all affirmative defenses as required by Article 1005.” And La. C.C.P. art. 1005 requires that “[t]he answer shall set forth affirmatively ... extinguishment of the obligation in any manner”. Thus, in order to assert that his obligation as to the D’Or-villes’ surety was extinguished, it was necessary for Mr. Simmons to plead the extin-guishment as an affirmative defense. Or it was necessary that Mr. Simmons plead the peremptory exception of res judicata.
 
 [4]
 

 See
 
 La. C.C.P. art. 927 A(3);
 
 see also
 
 La. R.S. 13:4231. This is because “[a] compromise precludes the parties from bringing a subsequent action based upon the matter that was compromised.” La. Civil Code art. 3080.
 
 See also Ortego v. State, Dept. of Transportation and Devp.,
 
 96-1322 (La.2/25/97), 689 So.2d 1358, 1364 (“A valid compromise may form the basis of a plea of res judicata.”)
 

 In the absence of an affirmative defense in the answer or of an exception of res judicata, the matter of “compromise” is not an issue raised by the pleadings. | fiThus, the bank’s burden of proof on its demand to collect on a promissory note is not difficult. The lender “must merely produce the note in question to make out a
 
 pnma facie
 
 case. The burden then shifts to the defendant to prove any affirmative defenses.”
 
 Colonial Mortgage & Loan Corp. v. James,
 
 01-0526, p. 4 (La.App. 4 Cir. 3/6/02), 812 So.2d 817, 820. This same rule applies to the guarantor or surety.
 
 See Merchants Trust & Savings Bank v. Olano,
 
 512 So.2d 1218, 1219-1220 (La.App. 5th Cir.1987).
 

 Without a plea of compromise, the evidence of the kind submitted by Mr. Simmons which might arguably tend to prove that the debt was extinguished is irrelevant because it is of no consequence to the determination of the likelihood of whether the bank at trial could make out a
 
 pnma facie
 
 case that the debt is owed.
 
 See
 
 La. C.E. arts. 401 and 402. If Mr. Simmons’ pleadings have not put the extinguishment of the obligation at issue (and they did not), his affidavit does not show that there is a genuine issue of
 
 material
 
 fact.
 
 See
 
 La. C.C.P. art. 966 B. “A fact is ‘material’ if it is one that would matter at trial on the merits.”
 
 Suire v. Lafayette City-Parish Consolidated Government,
 
 04-1459, p. 11 (La.4/12/05), 907 So.2d 37, 48.
 

 Because the bank clearly proved on its motion with its supporting affidavits that the D’Orvilles signed the promissory note and that Mr. Simmons signed the solidary guaranty, it was entitled to judgment against Mr. Simmons in the amount of the deficiency.
 

 
 *557
 
 J¿n
 

 We deem it proper to further explain why the testimony of Mr. Simmons in his affidavit would not support a remand to the trial court in order to allow him ah opportunity to amend or supplement his answer with the affirmative defense.
 
 See
 
 La. C.C.P. arts. 1151, 1153, and 1155.
 
 See also, e.g., Vermilion Corp. v. Vaughn,
 
 397 So.2d 490 (La.1981)
 
 [5]
 
 , and
 
 Hibernia National Bank v. Antonini,
 
 33,436, pp. 6-8 (La.App. 2 Cir. 8/23/00), 767 So.2d 143, 146-148.
 

 “A party who asserts that an obligation is null, or that it has been modified or extinguished, must prove the facts or acts giving rise to the nullity, modification, or extinction.” La. Civil Code art. 1831;
 
 see also American Bank v. Saxena,
 
 553 So.2d 836, 844 (La.1989). Thus, Mr. Simmons must prove the
 
 existence
 
 of the contract of compromise. “A compromise shall be made in writing or recited in open court, in which case the recitation shall be susceptible of being transcribed from the record of the proceedings.” La. Civil Code art. 3072. But Mr. Simmons has not identified any writing which constitutes the compromise.
 

 It is true that the compromise need not be contained in a
 
 single
 
 written instrument.
 
 Felder v. Georgia Pacific Corp.,
 
 405 So.2d 521, 523 (La.1981). “A contract is formed by the consent of the parties through offer and acceptance.” La. Civil Code art. 1927. “It would suffice that there be a written offer signed by the offerer and a written acceptance signed by the acceptor, even if the offer and acceptance are contained in separate writings.”
 
 Felder, supra,
 
 405 So.2d at 524. While Mr. Simmons’ email might arguably be considered his “offer,” surely the |sbank president’s receipt of that email and his email merely directing that it be forwarded to the bank’s attorney, does not constitute “acceptance.”
 

 As we have previously explained, the Supreme Court in
 
 Felder
 
 “was' not signal-ling a lessening of the requirement that the acceptance and acquiescence therein of both parties be clearly and unequivocably [sic] expressed.”
 
 Townsend v. Square,
 
 94-0758, p. 6 (La.App. 4 Cir. 9/29/94), 643 So.2d 787, 790. Just as in
 
 Townsend,
 
 the bank president’s email is “not sufficient evidence of [its] acquiescence in such an agreement.”
 
 Id.
 

 Nonetheless, Mr. Simmons argues that his email is suggestive of the fact that negotiations toward a compromise had begun and that this raises a genuine issue of material fact that a compromise was ultimately reached. But he ignores the formal requirement that the bank’s acceptance of any offer of compromise must be in writing.
 
 See
 
 La. Civil Code arts. 1927 and 3072. Thus, there is no such thing as an oral compromise or compromise through discussion alone. “A compromise agreement which .is not reduced to writing and evidenced by documentation signed by both parties is unenforceable.”
 
 Hawthorne v. Barbier,
 
 02-1903, p. 3 (La.App. 4 Cir. 2/19/03), 841 So.2d 28, 29, citing to
 
 Felder, supra.
 
 The writings identified by Mr. Simmons (even taken together) do not evidence that the consent of both parties to a compromise was obtained through an offer and acceptance. “[W]hether a compromise was ultimately reached between the bank president and Mr. Simmons” could only be proven by a written contract.
 

 In the absence of identifying a
 
 written
 
 compromise, Mr. Simmons has failed to
 
 *558
 
 raise a genuine issue of material fact which would preclude summary judgment.
 
 [6]
 

 J¿V
 

 “An appellate court reviews a motion for summary judgment
 
 de novo,
 
 using the same criteria applied by a trial court to determine whether summary judgment is appropriate.”
 
 Franklin Credit Management Corp. v. Gray,
 
 07-1438, pp. 4-5 (La.App. 4 Cir. 1/14/09), 2 So.3d 598, 601. “The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.” La. C.C.P. art. 966 A(2).
 

 In order to obtain summary judgment, the bank was required to establish that “the pleadings, depositions, answers to interrogatories, and admissions on file, to
 
 *559
 
 gether with the affidavits, if any, show that there is no genuine issue as to material facts, and that mover is entitled to judgment as a matter of law.” La. |10C.C.P. art. 966 B. The bank clearly established the amount of the outstanding deficiency remaining on the debt after crediting the proceeds of the sheriffs sale and clearly established that Mr. Simmons as solidary surety was bound to repay the bank the deficiency.
 
 See Franklin Credit, supra; Colonial Mortgage, supra,
 
 and
 
 Merchants Trust, supra.
 

 In order to defeat summary judgment, the burden then shifted to Mr. Simmons, who “may not rest upon the mere allegations or denials of his pleading.” La. C.C.P. art. 967 B. Mr. Simmons needed “competent evidence showing the existence of specific facts establishing a genuine issue of material fact”; simply showing “the presence of disputed facts” is insufficient if there is no legal issue presented by those contested facts.
 
 Franklin Credit, supra,
 
 2 So.3d at 603.
 

 Had Mr. Simmons either pleaded the affirmative defense of extinguishment of the obligation or peremptorily excepted on the grounds of res judicata, he would have had the burden of proof. But it is clear “that there is an absence of factual support for one or more elements essential to [Mr. Simmons’] defense” on which he would have had the burden of proof at the trial. La. C.C.P. art. 966 C(2);
 
 see also King v. Parish Nat’l Bank,
 
 04-0337, pp. 7-8 (La.10/19/04), 885 So.2d 540, 545-546. Thus, no genuine issue of material fact exists as to the defense that his guaranty obligation was extinguished by compromise.
 

 Because there is no genuine issue of material fact concerning Mr. Simmons’ liability on the D’Orvilles’ note and his guaranty, summary judgment is appropriate.
 
 See Saxena, supra,
 
 553 So.2d at 845. After our
 
 de novo
 
 review of | nthe summary judgment, we conclude 'that the trial court correctly rendered judgment in favor of the bank and against Mr. Simmons for the full amount of the outstanding deficiency.
 

 DECREE
 

 The judgment rendered and signed on May 14, 2010, is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . The district court's judgment, with the consent of the bank, gives Mr. Simmons a credit fbr the entire $400,000.
 

 [2]
 

 . The D’Orvilles' debt to the bank had in the meantime been discharged in bankruptcy.
 

 [3]
 

 . La. Civil Code art. 1906 provides: “A contract is an agreement by two or more persons whereby obligations are created, modified, or extinguished.”
 

 [4]
 

 .
 
 See
 
 La. C.C.P. art. 1005 which provides in pertinent part: “If a party has mistakenly designated an affirmative defense as a peremptory exception, ..., or a peremptory exception as an affirmative defense, and if justice so requires, the court, on such terms as it may prescribe, shall treat the pleading as if there had been a proper designation."
 

 [5]
 

 . The strength of the holding in
 
 Vermilion Corp.
 
 has been diluted by the subsequent amendments to La. C.C.P. art. 966.
 
 See JCM Const. Co., Inc. v. Orleans Parish School Board,
 
 02-0824, p. 41 (La.App. 4 Cir. 11/17/03), 860 So.2d 610, 634.
 

 [6]
 

 . We have not overlooked an alternative theory to preclude summary judgment which Mr. Simmons raises for the first time on appeal. "Absent a valid settlement agreement,” he writes in his brief, "Mr. Simmons avers a valid oral agreement was reached regarding the discharge of the debt once he was contacted about the pending foreclosure.” Ordinarily, we would not even consider such an argument. See Rule 2-12.4, URCA;
 
 Council of the City of New Orleans v. Washington,
 
 09-1067 (La.5/29/09), 9 So.3d 854, 856 ("The well-settled jurisprudence of [the Louisiana Supreme Court] establishes that as a general matter, appellate courts will not consider issues raised for the first time, which are not pleaded in the court below and which the District Court has not addressed.”). He now argues that
 
 American Bank & Trust Co. v. Int’l Dev. Corp.,
 
 506 So.2d 1234, 1236 (La.App. 1st Cir.1987) supports his argument that parol evidence is admissible to establish that the bank orally modified his written guaranty. We have closely examined the trial court record and note that not even one time was it ever suggested that the bank had agreed to limit Mr. Simmons’ guaranty to obligation to $400,000, subject to a credit on the proceeds of the sheriff’s auction, and Mr. Simmons had ample opportunities to raise the issue. The suit against Mr. Simmons was filed in June 2008. Although Mr. Simmons refused long-arm service, he made a general appearance the following months at which time he requested an additional thirty days within which to answer the petition. He nonetheless failed to answer within the delay granted to him and two months after the expiration of that time period a default judgment was entered against Mr. Simmons. The day following the entry of the preliminary default, Mr. Simmons filed his answer, which as we have noted asserted no affirmative defenses.
 

 The following month the bank filed its first motion for summary judgment, which was set for hearing sixty days later. In its supporting memorandum the bank noted that Mr. Simmons had asserted no affirmative defenses. At Mr. Simmons’ request the hearing on the motion was continued without date.
 

 Two months later, the bank re-filed its motion which was set for hearing thirty days later. The bank again observed that no affirmative defenses had been asserted. Less than a week before the scheduled hearing Mr. Simmons again requested a continuance; in his motion he stated that he needed time "to execute an Affidavit in connection with this matter.” The hearing was against postponed — this time for sixty days. Even though Mr. Simmons did not amend or supplement his answer, and did not submit any affidavit, his counsel did dispute an alleged discrepancy in the interest charged, the application of the funds received from the sheriff's sale, the costs of force-placed insurance, and delay in the foreclosure. But he was silent regarding a modification of the guaranty. After more than one year after the suit was filed against Mr. Simmons, the trial court denied the bank’s motion for summary judgment.
 

 The following year the bank re-filed its motion for summaty judgment which was set for hearing sixty days later. Less than three days before the hearing Mr. Simmons requested and obtained a sixty-day postponement of the hearing. Though Mr. Simmons executed an affidavit, he still did not amend or supplement his answer to assert any affirmative defense and his written legal argument made no reference to any agreement by the bank to reduce his exposure on his guaranty. To summarize, not until April 10, 2010 — nearly two years after he was sued — did Mr. Simmons even mention in passing that the bank had modified his guaranty obligation.