| | | |
|---|---|---|
| **WHITNEY BANK** | * | **NO. 2019-CA-1070** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **CHRISTOPHER ROBERT** | * | |
| **CARBINE AND JOSEPH D.** | | **FOURTH CIRCUIT** |
| **SANDO** | * | |
| | | **STATE OF LOUISIANA** |

* * * * * * *

<u>**CONSOLIDATED WITH:**</u>        <u>**CONSOLIDATED WITH:**</u>

**JOSEPH D. SANDO**        **NO. 2019-CA-1071**

**VERSUS**

**WHITNEY BANK, FREDDIE
ELLIOTT AND CATHEY
SAURAGE**

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-01361, DIVISION "D"
Honorable Nakisha Ervin-Knott, Judge
* * * * * *
**JAMES F. MCKAY III
CHIEF JUDGE**
* * * * * *

(Court composed of Chief Judge James F. McKay III, Judge Terri F. Love, Judge
Dale N. Atkins)

WILLIAM T. FINN
PETER J. SEGRIST
CARVER DARDEN KORETZKY TESSIER FINN BLOSSMAN & AREAUX,
LLC
1100 Poydras Street, Suite 3100
New Orleans, Louisiana 70163
        COUNSEL FOR PLAINTIFF/APPELLEE HANCOCK WHITNEY

DOUGLAS M. SCHMIDT
PETER R. BORSTELL
RICCI PARTNERS, LLC
335 City Park Ave.
New Orleans, Louisiana 70119
        COUNSEL FOR DEFENDANT/APPELLANT JOSEPH D. SANDO

**AFFIRMED**

**JUNE 24, 2020**

On June 26, 2014, Joseph D. Sando executed a commercial guaranty agreement in favor of Hancock Whitney Bank ("Whitney"), whereby he personally guaranteed the current and future indebtedness of Chris Carbine, Inc. ("Carbine Motorcars"), a Louisiana Corporation engaged in the business of selling luxury automobiles. On September 26, 2015, Carbine Motorcars executed a promissory note in the original principal amount of one million dollars ($1,000,000.00), due and payable with interest to the order of Whitney. Carbine Motorcars failed to keep up its payments on the note in accordance with the terms thereof. On October 13, 2017, Whitney made demand upon Carbine Motorcars and Mr. Sando, notifying them that the full amount of the indebtedness was due immediately. Neither Carbine Motorcars, nor Mr. Sando made any payments in response to Whitney's demand.

On February 9, 2018, Whitney filed suit against Mr. Sando for unpaid principal, interest, fees, costs and attorneys' fees under the guaranty.[1] Mr. Sando

---

[1] On February 26, 2018, Mr. Sando filed a separate lawsuit against Whitney and two of its former employees, Cathey Saurage and Freddie Elliott, asserting claims of breach of fiduciary duties, detrimental reliance, unjust enrichment, breach of an implied contract and negligent

1

filed a reconventional demand against Whitney and two former Whitney employees, Cathey Suarage and Freddie Elliott, on April 24, 2018.[2]

Regarding Mr. Sando's reconventional demand, Whitney and Ms. Suarage filed a number of exceptions, including: declinatory exceptions of *lis pendens*; peremptory exceptions of no cause of action and prescription; and dilatory exceptions of vagueness, ambiguity and nonconformity with La. C.C.P. art. 891. On August 17, 2018, the trial court granted the exceptions of no cause of action and prescription and dismissed Mr. Sando's reconventional demand against Whitney and Ms. Suarage. The trial court refused to give Mr. Sando an opportunity to amend his petition and/or answer and plead facts and allegations to cure the objections raised in the exception.

On October 23, 2018, Whitney filed a motion for summary judgment against Mr. Sando to enforce his obligations under the guaranty. A hearing on the motion for summary judgment was originally set for December 14, 2018. On December 6, 2018, Mr. Sando filed a motion to continue for medical reasons and because he needed to take the depositions of Ms. Suarage and Mr. Elliott. The district court granted the continuance and reset the hearing on the motion for summary judgment to February 1, 2019.

Mr. Sando propounded notices of deposition upon Ms. Suarage and Mr. Elliott, seeking to take their depositions on January 15, 2019. Ms. Suarage and Mr.

---

and/or fraudulent misrepresentation. *Sando v. Whitney Bank, et al.*, Case No. 2018-1859. The district court subsequently consolidated that lawsuit with Whitney's suit against Mr. Sando.
[2] Mr. Elliott was not served with the reconventional demand or Mr. Sando's original lawsuit in Case No. 2018-1859 until October 13, 2018. The cases were consolidated on December 6, 2018.

Elliott, along with Whitney, filed a motion to quash the deposition notices. Following a January 11, 2019 hearing, the district court quashed Mr. Sando's deposition notices based upon his admission that he had guaranteed the debt of Carbine Motorcars when he signed the guaranty. The court also recognized his failure to identify a single genuinely disputed issue of material fact, a valid affirmative defense, and/or any other justifiable reason for needing the depositions of Ms. Saurage and Mr. Elliott. Seeking review of the district court's judgment, Mr. Sando took a supervisory writ, which this Court denied.[3]

The hearing on Whitney's motion for summary judgment took place on February 1, 2019. The court granted the motion and awarded Whitney the principal amount due on the note of $934,063.31, plus interest, costs and fees, in accordance with the terms thereof. Thereafter, Mr. Sando filed a motion for new trial, which the court denied on April 12, 2019. Mr. Sando now appeals the trial court's judgment granting Whitney's motion for summary judgment.

In his first assignment of error, Mr. Sando contends that the trial court erred in not allowing him an opportunity to amend his pleadings to remedy the objections raised by the exception of no cause of action. The peremptory exception of no cause of action tests the legal sufficiency of a plaintiff's petition, *i.e.*, whether the plaintiff is legally entitled to the relief sought under the allegations set forth on the face of the petition. *Badeaux v. Southwest Computer Bureau, Inc.*, 2005-0612, p. 7 (La. 3/1/06), 929 So.2d 1211, 1217; See also La. C.C.P. art. 927.

---

[3] 2019-C-0099

3

The exception thus "questions whether the law extends a remedy to anyone under the factual allegations of the petition." *Villareal v. 6494 Homes, LLC,* 48,302, p. 5 (La. App. 2 Cir. 8/17/13), 121 So.3d 1246, 1250. The exception is tried on the face of the pleadings, and no evidence may be offered to support or controvert the exception. La. C.C.P. art. 931. Rather, the court "must consider only the facts alleged by the plaintiff" and "must determine if the . . . petition presents a case which legally entitles the plaintiff to the relief sought." *Delta Bank & Trust Co. v. Lassiter*, 383 So.2d 330, 336 (La. 1980). "[T]he decision as to whether to grant leave to amend or supplement a pleading is within the sound discretion of the trial court, and its ruling will not be disturbed on appeal except where an abuse of discretion has occurred and indicates a possibility of resulting injustice." *United Teachers of New Orleans v. State Bd. Of Elementary and Secondary Educ.*, 2007-0031 (La. App. 1 Cir. 3/26/08), 985 So.2d 184, 199. "Amendment, however, is not permitted when it would constitute a vain and useless act." *Massiha v. Beahm*, 2007-0137, p. 4 (La. App. 4 Cir. 8/15/07), 966 So.2d 87, 89.

In his reconventional demand, Mr. Sando alleged that Whitney and its former employees made various oral agreements with him, and that Whitney and its former employees subsequently breached those alleged agreements. Mr. Sando has never alleged that these alleged oral agreements were memorialized in any written agreement between him and Whitney.

"As a reaction against the situation arising from the increase in litigation instituted by aggrieved borrowers, special legislation was enacted in Louisiana, as

in other states, for the purpose of ordering the lender-borrower relation in a manner that would diminish the number of disputes between such parties."[4] The Louisiana Credit Agreement Statute[5], enacted in 1989, provides that "[a] debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." La. R.S. 6:1122. The Credit Agreement Statute also applies to guaranty agreements between lenders and guarantors, such as Mr. Sando. See *Hancock Bank of La. v. 3429 H, LLC*, 2015-0355, pp. 8-9 (La. App. 5 Cir. 1/13/16), 184 So.3d 274, 279-280. In the instant case, there exists no written agreement between Mr. Sando and Whitney. Therefore, allowing Mr. Sando the opportunity to amend his petition would be a vain and useless act. Accordingly, the trial court did not abuse its discretion when it denied Mr. Sando an opportunity to amend his pleadings.

In his second assignment of error, Mr. Sando contends that the trial court erred in not allowing him to take the depositions of Ms. Suarage and Mr. Elliott, who were and/or still are employed by Whitney as vice-presidents, who acted on its behalf, regarding the loan(s) made to Carbine Motorcars and the guarantees signed by Christopher Robert Carbine and Mr. Sando. In Louisiana, "the trial court has broad discretion in ruling on discovery matters." *Stolzle v. Safety & Systems Assur. Consultants, Inc.*, 2002-1197, p. 4 (La. 5/24/02), 819 So.2d 287,

---

[4] RONALD J. SCALISE, JR., *Writing Required*, 6 LA. CIV. L. TREATISE, LAW OF OBLIGATIONS § 15:23 (2d ed. Nov. 2016 update)
[5] La. R.S. 6:1121 *et seq.*

289. The trial judge is likewise "vested with a great deal of discretion in limiting the right of parties to take discovery depositions." *Brewer v. Loewer*, 383 So.2d 1325, 1327 (La. App. 3 Cir. 1980). "In its discretion, a court can refuse or limit discovery of matters not relevant, unreasonably vexatious, or tardily sought." *Belonga v. Crescent City Dodge, LLC*, 2000-3419, p. 2 (La. 3/9/01), 781 So.2d 1247, 1248. "Trial courts in Louisiana have broad discretion when regulating pre-trial discovery. This discretion will not be disturbed on appeal absent a clear showing of abuse." *Cantuba v. American Bureau of Shipping,* 2008-0497, p. 4 (La. App. 4 Cir. 6/3/09), 31 So.3d 397, 400. Mr. Sando has never articulated any good faith basis for requiring the depositions of the former employees. He never initiated a discovery conference, nor filed a motion to compel. In his own pleadings, Mr. Sando admits that he signed the guaranty, and Carbine Motorcars' indebtedness is past due and owing. There is no hypothetical testimony that either Ms. Suarage or Mr. Elliott could offer that would alter these undisputed, dispositive facts. Accordingly, we find no abuse of discretion in the trial court not giving Mr. Sando an opportunity to amend his petition.

In his third assignment of error, Mr. Sando contends that the trial court erred in granting Whitney summary judgment and a monetary judgment, while in his fourth assignment of error, he contends that the trial court erred in not finding material issues of fact and law precluding summary judgment. Motions for summary judgment are "favored and shall be construed to accomplish" the "just speedy, and inexpensive determination of every action." La. C.C.P. art. 966(A)(2);

6

*Babin v. Winn-Dixie La., Inc.*, 2000-0078, p. 3 (La. 6/30/2000), 764 So.2d 37, 39. A court must grant a motion for summary judgment 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.'" *Murphy v. Savannah*, 2018-0991, p. 7 (La. 5/8/19), 282 So.3d 1034, 1038 (citing La. C.C.P. art. 966(B). "A summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination of . . . whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." *Id.* (citing *Wright v. La. Power & Light*, 2006-1181, p. 16 (La. 3/9/07), 251 So.2d 1058, 1070).

Louisiana courts routinely grant lenders' motions for summary judgment against guarantors upon proof of both the existence of an underlying debt and the guarantor's signature upon a guaranty agreement covering that debt. See *Gulf Coast Bank and Trust Co. v. Elmore*, 2010-1237 (La. App. 4 Cir. 1/26/11), 57 So.3d 553. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. C.C. art. 2046.

In the instant case, the guaranty provides that Mr. Sando "absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of [Carbine Motorcars] . . . to [Whitney], and the performance and discharge of all [Carbine Motorcars'] obligations under the Note and the Related

7

Documents." Mr. Sando agreed that his "obligations and liability under [the guaranty] shall be on a 'solidary' or 'joint and several' basis along with [Carbine Motorcars] to the same degree and extent as if [Mr. Sando] had been and/or will be a co-borrower, co-principal obligor and/or co-maker of [Carbine Motorcars'] Indebtedness." The guaranty further provides that "[Mr. Sando's] liability is unlimited and [his] obligations are continuing." As such, the plain language of the guaranty shows that Mr. Sando bound himself to Carbine Motorcars as a solidary obligor, liable for the full amount of Carbine Motorcars' indebtedness to Whitney.

Whitney attached the guaranty to its motion for summary judgment. Mr. Sando admits in his answer and reconventional demand that he executed the guaranty. He further admits that Carbine Motorcars defaulted on the loan, and it is undisputed that Carbine Motorcars' indebtedness to Whitney is past due and owing. Therefore, under the clear and unambiguous terms of the guaranty and the undisputed summary judgment evidence, Mr. Sando is obligated to pay to Whitney the entirety of Carbine Motorcars' debt on demand. Accordingly, there are no genuine issues of material fact and Whitney is entitled to judgment as a matter of law.

In his fifth and final assignment of error, Mr. Sando contends that the trial court erred in not finding material issues of fact and law precluding summary judgment when the security was impaired and therefore, the suretyship was extinguished. Mr. Sando argues that he should be relieved of his obligations under the guaranty because (1) he is an ordinary surety, and (2) the "real security

underlying the obligation was impaired by the creditor Appellee Whitney Bank without [Mr. Sando's] consent or knowledge[.]" Mr. Sando's position is mistakenly based upon La. C.C. Article 3062. In pertinent part, that article provides:

> The modification or amendment of the principal obligation, or the impairment of real security held for it, by the creditor, in any material manner and without the consent of the surety, has the following effects.
>
> An ordinary suretyship is extinguished.
>
> A commercial suretyship is extinguished to the extent the surety is prejudiced by the action of the creditor. . . .

*Id.*

Mr. Sando is a commercial, not an ordinary, surety. "A commercial suretyship is one in which . . . (2) the principal obligor . . . is a business corporation, partnership, or other business entity [or] (3) [t]he principal obligation arises out of a commercial transaction of the principal obligor[.]" It is undisputed that the principal obligor, Carbine Motorcars, was a business entity, and that the principal obligation (the indebtedness under the note) arose out of a commercial transaction of Carbine Motorcars. The guaranty itself was also entitled "Commercial Guaranty." Accordingly, Mr. Sando is a commercial surety.

In any event, there is no evidence that Whitney impaired the vehicle inventory that secured the note, and, even if Whitney had, Mr. Sando specifically consented in writing so that Whitney could manage, sell, exchange, dispose of, surrender, release, and/or "otherwise deal with" any and all collateral securing the note. As a result, Mr. Sando has waived any purported right under La. C.C. art.

3062 to challenge Whitney's handling of the collateral and we find no merit in Mr. Sando's fifth and final assignment of error.

For the above and foregoing reasons, we affirm the judgment of the trial court.

**AFFIRMED**